### SUESSENBACH et al., Appellants, v. FIRST NAT. BANK, Respondent.

**1. Mines and Mining—Claims—Property ,before Patent.**

Where all of the laws, rules, regulations and customs with reference to a mining claim have been complied with, a property right, prior to the issuance of the patent, has been acquired that can be transferred or inherited.

**2. Same—Trust.**

Where the appellants, grantees of such a claim, (their grant being subject to that of respondent's as to a part, of which it or its grantors had held continuous possession,) acquired a patent to the entire claim, founded on the original location, there being no adverse claim by respondent, *held*, the appellants took the respondent's interest, charged with a trust that the court would enforce in an action brought by appellants to recover possession of the part held by the respondent.

**3. Same—Adverse Claim.**

Respondent's interest was not such an adverse claim within the meaning of sections 2325, 2326, Rev. St. U. S., as would require a protest of the appellants' application for a patent.

**4. Pleadings—Ejectment—Equitable Defense.**

Under the Code, equitable defenses may be interposed to an action of ejectment. It is also proper to dispose of such defenses first, and, if they are found in favor of the defendant, to discharge a jury from any consideration of the case.

**5. Same—Evidence.**

In such an action, on an issue of the equitable ownership of a mining claim, the admission in evidence of the rules of the mining district, and also the proceedings had in the land-office where the application to enter the claim was made, is proper as showing that by accident or fraud the legal title has not passed to the true owner.

(Argued October 8, 1888; affirmed October 13; opinion filed February 4, 1889.)

Appeal from district court of Lawrence county; Hon. CHARLES M. THOMAS, Judge.

*McLaughlin & Steele*, for appellants.

That the court erred in admitting in evidence the proceedings had in the land-office, and admitting the rules and regulations of the mining district, see *Silver Mining Co.* v. *Brown*, 10 Sawy. 246; *Smelting Co.* v. *Kemp*, 104 U. S. 640, 641; *Steele* v. *Smelting Co.*, 106 U. S. 450–455; *Quinby* v. *Conlan*, 104 U. S. 420; *Tilton* v. *Cofield*, 93 U. S. 163; *Uligh* v. *Garrison*, 2 Dak. 71, 2 N. W. Rep. 99; *French* v. *Lancaster*, 2 Dak. 346, 9 N. W. Rep. 716; *Golden Terra M. Co.* v. *Smith*, 2 Dak. 462, 11 N. W. Rep. 97; *Kendall* v. *San Juan Silver M. Co.*, 9 Colo. 349, 12 Pac. Rep. 198; *Golden Fleece Co.* v. *Cable Con. Co.*, 12 Nev. 324; *North Noonday M'g Co.* v. *Orient M'g Co.*, 6 Sawy. 299; *Jupiter Mining. Co.* v. *Bodie Con. M. Co.*, 7 Sawy. 112; section 2119, Civil Code.

Any interest, legal or equitable, constitutes an adverse claim. *Hamilton* v. *Southern Nev. G. & S. M. Co.*, 33 Fed. Rep. 562; *Butte City Smoke-House Lode Cases*, 12 Pac. Rep. 858; *Richmond M. Co.* v. *Rose*, 114 U. S. 576–584, 5 Sup. Ct. Rep. 1055; *Lee* v. *Stahl*, 11 Pac. Rep. 77.

There are no less than nine distinct allegations in the defendant's answer that its claim of title and that of its grantors, Stebbins and Hoffman, is a title adverse to the plaintiffs and their grantors.

The grantor of the defendant neglected to file with the register and receiver of the land-office at Deadwood, during the period of publication, an adverse claim to the lot in controversy. This was a waiver of any claim that he had, legal or equitable, against the applicants, for the lot in question. The answer fails to allege in any of its defenses or counter-claims that such an adverse claim as the law makes obligatory was filed with the land-officers at any time, or that any action was commenced by Stebbins or the defendant to determine the right of possession to the premises in dispute, within the time and in the manner provided

by the United States law relating to mineral lands; and both he and the defendant were thereafter concluded from disputing plaintiffs' right to recover possession of the disputed premises. Rev. St. §§ 2325, 2326.

The policy of the mining act to compel parties to settle or litigate their disputes relative to adverse claims to mining ground before entry and payment is made manifest by the subsequent portion of section 2326. No similar proceedings are known to any of the other land laws. As the United States supreme court say in *Mining Co.* v. *Consolidated Mining Co.*, 112 U. S. 167: "The system of law adopted for the sale and regulation of its mineral lands is 'totally different' from that which governs other public lands." See, also, *Meyendorf* v. *Frohner*, 3 Mont. 322; *Eureka Cons. Co.* v. *Richmond Cons. Co.*, 4 Sawy. 318; 12 Nev. 320–323; *Smelting Co.* v. *Kemp*, 104 U. S. 636–655; *Steele* v. *Smelting Co.*, 106 U. S. 447, 1 Sup. Ct. Rep. 389; *Talbot* v. *King*, 9 Pac. Rep. 438; *Raunheim* v. *Dahl*, Id. 892; *Montana Copper Co.* v. *Dahl*, Id. 894; *Gwillim* v. *Donnellan*, 115 U. S. 45, 5 Sup. Ct. Rep. 1110; *Wolverton* v. *Nichols*, 119 U. S. 485, 7 Sup. Ct. Rep. 289; *Nessler* v. *Bigelow*, 60 Cal. 101.

From the foregoing decisions, whatever were the rights and equities of Stebbins in the lot in controversy in July, 1878, he waived them by not filing his adverse claim, if he had any, with the register and receiver of the Deadwood land-office within the 60-days period of publication of the application for the patent for placer claim No. 15.

When a statute confers a right, and prescribes adequate means of protecting it, the proprietor of that right is confined to the statutory remedy. *Almy* v. *Harris*, 5 Johns. 175; *McCowen* v. *Coherty*, 3 Wend. 494; *Stafford* v. *Ingersoll*, 3 Hill, 38; *Dudley* v. *Mayhew*, 3 N. Y. 15; *Cofield* v. *McClellen*, 1 Colo. 374; *City of Denon* v. *Kent*, Id. 344; *Denning* v. *Smith*, 3 Johns. Ch. 345.

"Courts of equity do not assist those whose condition is attributable only to want of due diligence, nor lend their aid to par-

ties who, having had a plain, adequate, and complete remedy at law, have purposely omitted to avail themselves of it." *Hendrickson* v. *Hinckley*, 17 How. 604.

This was a legal action, triable by a jury. The issue between the applicant for a patent and the adverse claimant is necessarily narrowed down to the one question, who is entitled to the possession of the premises in controversy? Act of Congress, 1881, (Statutes at Large 1881, p. 565,) amendatory of section 2325; *Burke* v. *McDonald*, 13 Pac. Rep. 351; *Quimby* v. *Conlan*, 104 U. S. 420; *Estrada* v. *Murphy*, 19 Cal. 248; *Webber* v. *Marshall*, Id. 447; *Clark* v. *Huber*, 25 Cal. 597; *Lestrade* v. *Barth*, 19 Cal. 600; *Phenix Ins. Co.* v. *Doster*, 106 U. S. 30, 1 Sup. Ct. Rep. 18; *Killian* v. *Ebinghaus*, 110 U. S. 572, 4 Sup. Ct. Rep. 232; *Bradstreet* v. *Huntington*, 5 Pet. 408.

This is strictly a legal action, and the neglect of the defendant and its grantor to adverse the application for patent did not convert it into an equitable one.

"It is a rudimental principle in equity," says Chief Justice GIBSON, "that he who purchases an imperfect title must stand or fall by the case of his vendor; and this rule has never been shaken." *Kramer* v. *Arthurs*, 7 Pa. St. 170; *Sergeant* v. *Ingersol*, Id. 345; *Stewart* v. *Granley*, 18 Pac. Rep. 621. "A deed is to be tested by making reference to the authority recited in it for making the sale." *Moore* v. *Brown*, 11 How. U. S. 414; 2 Kent, 484, 485; *Denning* v. *Smith*, 3 Johns. Ch. 332. "But a quitclaim deed does not pass more title than the grantor has, and does not give the one who claims under it the rights of a *bona fide* purchaser, without notice." 3 Washb. Real Prop. 356; *May* v. *Le Claire*, 11 Wall. 232; *Touchard* v. *Crow*, 29 Cal. 161; *Miller* v. *Boggs*, 25 Cal. 187; *Thorpe* v. *Keokuk Canal Co.*, 48 N. Y. 253; *Gress* v. *Evans*, 1 Dak. 400; *Morrison* v. *Wilson*, 30 Cal. 344; *Cadiz* v. *Majors*, 33 Cal. 289; *Barrett* v. *Bridge*, 50 Cal. 658. "Covenants in a deed are only co-extensive with the grant." Rawle, 198, 199, 415; Herman, Estoppel, § 289; *Brown* v. *Jackson*, 3 Wheat. 452; *Kimball* v. *Semple*, 25 Cal. 452; *Cadiz* v. *Majors*, 33 Cal. 288.

The defendant has no equity. The occupation of mineral land as and for the purpose of a town lot is of no effect as against a valid mining claim location, and no rights or equities flow therefrom. The statutes expressly forbid the acquisition of title by virtue of such occupation. *Talbot* v. *King*, 9 Pac. Rep. 437; *Butte City Smoke-House Lode Cases*, 12 Pac. Rep. 859; *Meyendorf* v. *Frohner*, 3 Mont. 322; *Hawke* v. *Deffebach*, 22 N. W. Rep. 480; *Pierce* v. *Sparks*, Id. 491, 115 U. S. 400–411, 11 Pac. Rep. 78; *Richmond Mining Company* v. *Rose*, 114 U. S. 584, 585, 5 Sup. Ct. Rep. 1055; *Eureka Case*, 4 Sawy. 318.

To charge the holder of the legal title to land under a patent of the United States as trustee for another, it must appear that by the law properly administered in the land department the title should have been awarded to the latter. It is not sufficient to show that there was error in adjudging the title to the patentee. *Bohall* v. *Dilla*, 114 U. S. 47, 5 Sup. Ct. Rep. 782; *Boggs* v. *Merced Mining Co.*, 14 Cal. 364, 365; *Nessler* v. *Bigelow*, 60 Cal. 101, 102; *Aurrechoechea* v. *Sinclair*, Id. 545–549; *Drew* v. *Valentine*, 18 Fed. Rep. 712; *Stark* v. *Starr*, 6 Wall. 418; *Simmons* v. *Ogle*, 105 U. S. 277, 278.

The occupation of the defendant is worthless when opposed to the federal title. *Couchaine* v. *Bullion Mining Co.*, 4 Nev. 818, 819. See, also, *Gardner* v. *Miller*, 47 Cal. 370; *Oaksmith* v. *Johnston*, 92 U. S. 347, 3 Washb. 331; *Frisbie* v. *Whitney*, 9 Wall. 187; *Yosemite Valley Case*, 15 Wall. 77; *Shepley* v. *Cowan*, 91 U. S. 330.

At the time of the application for the patent respondent was not in a position to demand title to the premises from the government. No right is derived from purchasing the claim of a prior settler, unless he has, by an actual entry at the proper land-office, acquired a transferable interest in the land. *Quinby* v. *Conlan*, 104 U. S. 420; *Hutton* v. *Frisbie*, 37 Cal. 490–495; *Whitney* v. *Frisbie*, 9 Wall. 187; *People* v. *Shearir*, 30 Cal. 648; *Doll* v. *Meador*, 16 Cal. 326; *Manning* v. *San Jacinto Tin Co.*, 7 Sawy. 426.

Right of possession is not an interest in the soil. Section 2322, Rev. St.; *Chapman* v. *Toy Long*, 4 Sawy. 34–35; *Forbes* v. *Grocey*, 94 U. S. 766; *Table Mt. Tunnel Co.* v. *Stranahan*, 20 Cal. 209; *Mining Co.* v. *Taylor*, 100 U. S. 42; *Belk* v. *Meagher*, 104 U. S. 283.

The plaintiffs are not trustees for the defendant. There is no privity between them. They are also strangers to each other's title, claiming the premises in question by reason of adverse claims of title. See sections 921, 279, and 293, Civil Code; Big. Estop. 294–302; *Blight's Lessees* v. *Rochester*, 7 Wheat. 335; *Society* v. *Town of Paulet*, 4 Pet. 406; *Watkins* v. *Holman*, 16 Pet. 53; *Osterhaut* v. *Shoemaker*, 3 Hill, 518; *Averill* v. *Wilson*, 4 Barb. 180, 185; Herm. Estop. §§ 263, 266, 270, 2823. Rawle, Cov. 454; *Robertson* v. *Pickerell*, 109 U. S. 613, 4 Sup. Ct. Rep. 407; *Collins* v. *Bartlett*, 44 Cal. 380; *Walkins* v. *Holman*, 16 Pet. 25; *San Francisco* v. *Lawton*, 18 Cal. 465; *Sparrow* v. *Kingman*, 1 N. Y. 242; *Willison* v. *Watkins*, 3 Pet. 43; *Jackson* v. *Huntington*, 5 Pet. 402; *Voorhees* v. *White's Heirs*, 2 A. K. Marsh. 27; *Winlock* v. *Hardy*, 4 Lit. 474.

There could be no trust under the provisions of section 279, C. C.

But we go further, and maintain that no trust can be created in the mineral lands of the United States by a locator that can affect or burden the title of the United States, or attach to it by reason of any adverse claim made by a third party. See *Warren* v. *Van Brunt*, 19 Wall. 646.

*G. C. Moody* and *Edwin Van Cise*, for respondent.

The mining claim of which the lot in controversy is a part was located by the defendant bank's "grantors." At the time of the grant to the defendant said mining claim was a valid, complete, and subsisting mining location, and has continued ever since to be a valid location, without break in the title or in the right to possession. Whatever rights the plaintiffs' grantors, the patentees, acquired, was under and by virtue of such location. Such location amounted to a grant by the govern-

ment to the locators of the exclusive right of possession, together with the right to acquire title from the government so long as they continued to comply with the laws of congress, and with the local laws, rules, and regulations governing such locations. They had the power and authority to convey and assign such property, and such right to purchase and complete the title in part to Stebbins and Hoffman and in part to their other transferees; and said Stebbins and Hoffman transferred to the defendant such property and right of possession in this part of the claim, together with the right to obtain from the government the full title to said disputed premises by patent under and by virtue of the location which they, the locators, had made. The government held the title, after said location was complete, in trust for the locators and their transferees. *Belke* v. *Meagher*, 3 Mont. 65, 78, 79; *Belke* v. *Meagher*, 104 U. S. 279, 283; *Noyes* v. *Mantle*, 8 Sup. Ct. Rep. 1133, 5 Pac. Rep. 856, 861, 862; *Ferguson* v. *Neville*, 61 Cal. 356–358; *Hopkins* v. *Noyes*, 2 Pac. Rep. 280; *Silver Bow M. & M. Co.* v. *Clark*, 5 Pac. Rep. 570, 576; *Blake* v. *Mining Co.*, 2 Utah, 54, 57; *Forbes* v. *Gracey*, 94 U. S. 762, 767; *Meyendorf* v. *Frohner*, 3 Mont. 342, 343; *Renshaw* v. *Switzer*, 13 Pac. Rep. 127, 128.

The conveyances made by the locators to Stebbins and Hoffman amounted to a contract for the purchase by them of this part of the claim. They could lawfully transfer the same to this defendant. The locators and their grantees were bound when they obtained the title to the entire claim to convey to Stebbins and Hoffman while they held it, or to this defendant while it held this contract, the full and complete title which was obtained by the patent.

Stebbins and Hoffman having paid the locators the full purchase price, and having been admitted into possession by them, and F. T. Sutherland, Lake, and J. J. Sutherland having agreed to make good the conveyance of the locators, and to protect Stebbins and Hoffman and their transferees in the possession and right to the possession of the premises, they, the said Sutherland, Lake, and Sutherland, were bound by that agreement.

In the absence of any agreement by them, they were bound by these conveyances to Stebbins and Hoffman. So, also, were their grantees and all parties claiming under them having full notice of the agreement or of the right under which Stebbins and Hoffman and this defendant held the possession. Possession was notice.

Thereafter, when Sutherland, McCaffery, Suessenbach, and the heirs of Edward Welch took the title to this part by patent, they acquired it in trust for, and should be compelled to convey it to, the defendant.

If a trust exists at the time of the issuance of the patent, a court of equity will control the operation of the legal title for the benefit of the *cestui que trust*. *O'Connor* v. *Irwin*, 16 Pac. Rep. 236, 237; *Bludworth* v. *Lake*, 33 Cal. 263; *Alexander* v. *Sherman*, 16 Pac. Rep. 45; *Blake* v. *Thom*, Id. 270; *Philes* v. *Hickies*, 18 Pac. Rep. 595, 596; *Gilbert* v. *Sleeper*, 12 Pac. Rep. 172; *Rector* v. *Gibson*, 111 U. S. 276, 4 Sup. Ct. Rep. 605; *Marquez* v. *Frisbe*, 101 U. S. 473; *Moore* v. *Robbins*, 96 U. S. 530; *Kimball* v. *McIntyre*, 1 Pac. Rep. 167; *Baker* v.*Woodward*, 6 Pac. Rep. 173; *Lakin* v. *Mining Co.*, 25 Fed Rep. 337; Civil Code, § 1297; *Peasley* v. *McFadden*, 10 Pac. Rep. 179; *Fideler* v. *Norton*, 30 N. W. Rep. 128.

The claim which respondent makes is not an adverse claim within the meaning of the law of congress. It claims under the same location and grant. It does not claim by virtue of any adverse location. If the defendant's grantors had undertaken to file a protest and bring an adverse suit, they would have necessarily alleged and proven the same identical facts with reference to the location by Noah Siever and his associates as gave the right to plaintiffs to have this patent issued. It is not contemplated that an owner in and under the same location shall protest against the issuance of a patent for said location, or for any portion thereof. He is interested to have the patent issued. One who protests and brings an adverse suit alleges necessarily the existence of another and adverse location, covering the same or a portion of the same ground.

Supposing Siever and his co-locators who conveyed to Stebbins had proceeded to and had applied for and obtained a patent to this placer claim, would any one contend they were not bound by these conveyances to Stebbins? Are their grantees with full notice of all the rights and equities in any stronger positions? Civil Code, § 1297; *Doherty* v. *Morris*, 16 Pac. Rep. 911; *Peasley* v. *McFadden*, 10 Pac. Rep. 179; *O'Conner* v. *Irwin*, 16 Pac. Rep. 236, 237; *Blake* v. *Mining Co.*, 2 Utah, 54; Rev. St. U. S. § 2332.

It has never been held, so far as we are aware, that it was necessary for co-owners of the same location, or parties claiming under the same location, to adverse the application for a patent to such location; at least, unless one of the co-tenants or co-owners had been excluded from the possession by the other co-owners,—not this case, for this defendant's grantors, and it, up to the commencement of this action, remained in undisputed, peaceable possession. Week's Mineral Land, § 128.

The amended location certificate did not purport to be a relocation, but amended to more clearly define the boundaries. Again, such amended certificate does not supersede the original, and relates back to the first location. *Strepy* v. *Stark*, 5 Pac. Rep. 111; Dak. Rev. Code, p. 512, c. 31, § 13; *McEvoy* v. *Hyman*, 25 Fed. Rep. 596.

The plaintiffs, claiming title in their abstract and application under Siever and others, as does defendant Bank, are estopped from denying the validity of their grantor's title. *Blake* v. *Thom*, 16 Pac. Rep. 270; *Mining Co.* v. *Deferrari*, 62 Cal. 160.

The court's dispensing with the jury, and deciding the case on the equitable issues and counter-claims, is beyond question, and is supported by the unanimous decisions of the courts where similar practice prevails. *Onson* v. *Cown*, 22 Wis. 329; *Lombard* v. *Cowhan*, 34 Wis. 490, 492; Code Civil Proc. § 118; *Cavilli* v. *Allen*, 57 N. Y. 508, 514; *Bludworth* v. *Lake*, 33 Cal. 255; Pom. Rem. §§ 97, 737, 746, 764, 792; *Arguelo* v. *Adinger*, 10 Cal. 150, 160; *Estrada* v. *Murphy*, 19 Cal. 248, 272, 273; *Weber* v. *Marshall*, Id. 447, 457; *Lestrode* v. *Barth*, Id. 660, 671; *Du-*

*Pont* v. *Davis*, 35 Wis. 631, 639; *Ingles* v. *Patterson*, 36 Wis. 373, 376; *Bartlett* v. *Judd*, 21 N. Y. 200, 203; *Tabor* v. *Mackee*, 58 Ind. 290.

CARLAND, J.  This action was brought in the district court of Lawrence county by the appellants to recover the possession of a parcel of land situate, lying, and being in the city of Dead-wood, county of Lawrence, territory of Dakota, and more particularly described as follows:  Commencing at the north-east corner of Main and Lee streets; thence running in a north-easterly direction along the line of said Main street 21.5 feet; thence at right angles to said Main street in a north-westerly direction 100 feet to place of beginning,—being lot No. 2, in block No. 3, and a part of mineral claim No. 86, as patented by the United States.  The appellants deraigned their title from the United States through the usual mineral certificate or patent and several mesne conveyances from the original patentees and their grantees.  The respondent, in order to defeat the claim of the appellants, set up by its answer several equitable defenses, and asked that the plaintiffs be declared by the judgment of the court to hold the premises hereinbefore described in trust for the respondent, and that, upon the payment of certain costs and expenses expended in obtaining the patent the plaintiffs be compelled to convey said premises to the respondent.  As to the mode of procedure at the trial more will be said further on in this opinion.  The court found that the equitable claim of the respondent was a valid one, and rendered judgment in accordance with the prayer of its answer.  The court found the facts to be substantially as follows:

That on the 28th day of February, 1877, the land in controversy, and the land contiguous thereto and surrounding it, was a part of the unappropriated public domain of the United States, and was land valuable for minerals, and contained valuable mineral deposits, to-wit, gold, and what is known and called "placer ground;" and upon said day Noah Siever, Edward Durham, William Moore, and Thomas Clifton were citizens of the United

States, and had theretofore entered upon and explored the same,. and discovered valuable mineral deposits therein, to-wit, gold; and on the 16th day of March, 1877, the said Noah Siever, Edward Durham, William Moore, and Thomas Clifton duly located,. claimed, and appropriated the same as placer mining ground,. the same being known and called "Placer Claim No. 15," above discovery, on Whitewood gulch, in Whitewood mining district,. Lawrence county, Dak., in accordance with the customs, laws of the United States, the local laws, and the customs, rules, and regulations of miners in said mining district, by distinctly marking the surface boundaries of said claim so that they could be readily traced on the ground; by setting. substantial stakes at each corner of said claim, and on the sides thereof, with the name of the claim marked thereon and the name of the locators; and by putting a plain sign or notice at the points of discovery thereon, containing the name of the claim as "Placer Claim No. 15," above discovery, and the names of the locators, to-wit, Noah Siever, Edward Durham, William Moore, and Thomas Clifton, and the date of location, to-wit, March 16, 1877; and by filing and recording a certificate of location in the records of the recorder of said Whitewood mining district. And said locators remained in continuous possession of said placer claim, working and developing the same, until their sale and transfer as hereinafter stated. That during the months of March and April, 1877, said Noah Siever and his said associates expended more than $500 in value in labor and improvements in working and developing said placer claim No. 15; said placer claim No. 15 containing not to exceed four acres, and no more than was allowed by the local laws, rules, and regulations in force in said mining district. That on the 28th day of March, 1877, the said Noah Siever, Edward Durham, William Moore, and Thomas Clifton, being then the owners of and in actual possession of said placer claim No. 15 as aforesaid, claiming the same under the mineral land laws of the United States, for a valuable consideration made, executed, and delivered to William R. Stebbins and C. Hoffman, who were citizens of the United

States, their deeds of conveyance for a portion of said placer mining claim, described in said deed as lot No. 2 A, on Main street, in the town of Deadwood, county of Lawrence, and territory of Dakota, which are the same premises in controversy in this action, and then and there delivered possession of said premises to said Stebbins and Hoffman, which deed was afterwards filed for record in the register of deeds' office of Lawrence county on the 25th day of April, 1877, and recorded in Volume A, page 77, of the records of said office, and which deed was in the words and figures following:

"Noah Siever, Edward Durham, William Moore, and Thomas Clifton, of Deadwood, Lawrence county, territory of Dakota, agree with William R. Stebbins and C. Hoffman, of the same place, that in consideration of one dollar to them in hand paid, the receipt whereof is hereby acknowledged, the said Stebbins and Hoffman have full right to occupy and possess lot No. 2 A, on Main street, in the town of Deadwood, county and territory aforesaid; the said Noah Siever, Edward Durham, William Moore, and Thomas Clifton, being the owners of placer claim No. 15, above discovery, in Whitewood mining district, county and territory aforesaid, hereby deeding and conveying to said Stebbins and Hoffman all their claim, right to possess, or title they may have by reason and virtue of said placer claim to said premises, excepting the right to mine for gold under said premises, and then such mining to be done after giving reasonable notice to said Stebbins and Hoffman, and all reasonable precautions to carry on said mining to be used to prevent damage and injury to said premises. In witness whereof we hereunto set our hands and seals. Done at Deadwood, Lawrence county, territory of Dakota, this 28th day of March, A. D. 1877.

"NOAH SIEVER.    [L. S.]
"EDWARD DURHAM.    [L. S.]
"WILLIAM MOORE.    [L. S.]
"THOMAS CLIFTON.    [L. S.]

"In presence of E. C. BREARLEY."

That prior to the execution of the conveyance last named said Noah Siever, Edward Durham, William Moore, and Thomas Clifton, having agreed with owners of other placer claims immediately contiguous to said placer claim No. 15, to-wit, Nos. 13 and 14, laid out and platted a town or city upon their claims 13, 14, and 15, calling it " Deadwood," agreeing that the owners of each placer claim respectively should be the owners of the lots and blocks of said town or city, within the limits of such claim. That subsequently, by allotment and segregation, the said Noah Siever and Edward Durham became the sole claimants to lot No. 2 A, on Main street, in Deadwood, the premises now in controversy, and a part of said placer claim No. 15. That prior to the conveyance of March 28, 1877, hereinbefore referred to, from Siever, Durham, Moore, and Clifton, said Siever and Durham had employed James A. Hamilton and H. J. Scott to aid them in constructing a building on said lot No. 2 A, and for their aid had promised them an interest in said lot and in said building, and on the 27th day of March, 1877, the said Noah Siever, Edward Durham, James A. Hamilton, and H. J. Scott, for a valuable consideration, to-wit, $3,000, then paid to them by said Stebbins and Hoffman, made, executed, and delivered to the said W. R. Stebbins and C. Hoffman a deed to said lot No. 2 A, the premises in controversy, which deed was duly acknowledged, and on the 20th day of April, 1877, was duly recorded in Book A of Deeds, pages 24, 25, in the office of the register of deeds for Lawrence county, and is in words and figures following, to-wit:

"This indenture, made the 27th day of March, A. D. 1877, between Noah Siever, Edward Durham, James A. Hamilton, and H. J. Scott, of Deadwood, Lawrence county, territory of Dakota, parties of the first part, and William R. Stebbins and C. Hoffman, of the same place, parties of the second part, witnesseth, the said parties of the first part, for and in consideration of the sum of three thousand dollars, to them in hand paid by the parties of the second part, the receipt whereof is hereby

acknowledged, have remised, released, and forever quitclaimed,. and by these presents do remise, release, and forever quitclaim, unto the said parties of the second part, and to their heirs and assigns, all of the following described real estate, or landed. claim or possessory right or property, situated and being in Deadwood, Lawrence county, territory of Dakota, to-wit, lot No. 2 A, as located by the parties of the first part, March 15, A. D. 1877, and recorded in Book B, page twenty-three, of the records of said Deadwood. The lot No. 2 A is more particularly described as being situated on Main street, in said Deadwood, having a frontage of twenty feet on Main street, and running back to the depth of one hundred feet. There is now upon said lot one two-story building, nearly completed, with a frontage of twenty feet and a depth of fifty feet. Together with all the rights, privileges, and franchises thereto incident, appendant, or appurtenant, or therewith usually had and enjoyed, and also all and singular the tenements, hereditaments, and appurtenances thereto belonging, or in any wise appertaining, and the rents, issues, and profits thereof, and also all the estate, right,. title, interest, property, possession, claim, and demand whatsoever, as well in law as in equity, of the said parties of the first. part, of, in, or to the said premises, and every part and parcel, thereof, with the appurtenances. To have and to hold all and singular the said premises, and privileges thereto incident, unto the said parties of the second part, their heirs and assigns, forever. And the said Noah Siever, Edward Durham, James A. Hamilton, and H. J. Scott, for themselves and their assigns and representatives, do hereby covenant and agree that they have full right and power to deed and convey the said premises, and that this conveyance does convey to William R. Stebbins and. C. Hoffman, parties of the second part, their heirs and assigns, the full possession, right of possession, and property in and to said lot No. 2 A, as against any individual, individuals, corporation, corporations, whomsoever or whatsoever, notwithstanding, forever. And the parties of the first part do further agree to sustain and defend the title and possession of the said par-

ties of the second part to the said premises as against any individual, individuals, corporation, or corporations. The said parties of the first part further agree that if any suit or suits be commenced against the said parties of the second part, involving the title to or the right of possession of the property herein conveyed, the said suit or suits will be defended and contested at the sole expense and cost of the parties of the first part, who hereby solemnly agree to keep said parties of the second part free and clear of any costs or damages that may occur by reason of any litigation in the premises.

"In witness whereof the said parties of the first part have hereunto set their hands and seals the day and year first above written.

"Noah Siever.          [L. S.]

"Edward Durham.        [L. S.]

"James A. Hamilton.    [L. S.]

"H. J. Scott.          [L. S.]

"Signed, sealed, and delivered in the presence of

"E. C. Brearley.

"John Wolzmuth.

"Christian Flucken."

(Acknowledgment.)

That this building thus erected by Siever, Durham, Hamilton, and Scott was a two-story frame building, about 20 feet front on Main street, by 60 feet deep, and the possession thereof was delivered to said Stebbins and Hoffman April 21, 1877. That said building and lot was used as a bank by the banking firm of Stebbins, Wood & Post, and for offices used and rented by them, the said William R. Stebbins being a member of the firm of said Stebbins, Wood & Post. That on or about August 1, 1877, the said Hoffman conveyed his interest in the premises in controversy to said William R. Stebbins, which conveyance was duly recorded on or about said date. That said banking firm of Stebbins, Wood & Post continued to occupy and possess under said conveyance and delivery of possession the said prem-

ises until about July, 1878, when the respondent was organized as a national bank, under the laws of congress, and succeeded to the business of said Stebbins, Wood & Post, and immediately went into possession and control of the said premises in controversy, and by a deed dated the 10th day of August, 1878, and acknowledged on the 24th day of the same month, the said William R. Stebbins sold, transferred, and conveyed said property to the respondent, which deed was duly filed for record August 31, 1878, and duly recorded in Book 23, page 54, of the records of the register of deeds' office of said Lawrence county, and said respondent has continued in the possession .of said disputed premises ever since the delivery of possession to it by the said Stebbins, Wood & Post, in July, 1878. That on or about June 26, 1877, the said Noah Siever, Edward Durham, William Moore, and Thomas Clifton, being in possession of said placer claim, and claiming to be the owners thereof, by virtue of the location heretofore stated, subject to the rights theretofore transferred by them to said Stebbins and Hoffman, for the consideration of $1,600, sold to F. T. Sutherland, H. F. Lake, and J. J. Sutherland all their right, title, and interest in and to said placer claim No. 15, and gave to the said Sutherland, Lake, and Sutherland a bill of sale therefor, which was on said date filed in the office of the recorder of the mining district, who was then the said J. J. Sutherland. That at the time of the execution of this bill of sale said Noah Siever and his associates delivered to the said Sutherland, Lake, and Sutherland possession of that portion of said placer claim, the possession of which remained in them, but expressly reserved therefrom said lot No. 2 A, theretofore conveyed by them, as hereinbefore stated, to Stebbins and Hoffman, and of which said Stebbins and Hoffman were then in possession, and as a part of the consideration for the sale of said placer claim No. 15 to said Frank T. Sutherland, H. F. Lake, and J. J. Sutherland, Sutherland, Lake, and Sutherland agreed with said Noah Siever and his associates to protect and respect and defend the title and possession of said William R. Stebbins and C. Hoffman to that part of placer claim No. 15

described as said lot No. 2 A, on Main street, Deadwood, and to keep and make good to them or their heirs and assigns the covenants contained in the said deeds of Siever, Durham, Clifton, and Moore, and of Siever, Durham, Hamilton, and Scott, to the said Stebbins and Hoffman hereinbefore set forth. That on the 25th day of July, 1877, the said J. J. Sutherland sold his interest in placer claim No. 15 to F. T. Sutherland, and on the same day said F. T. Sutherland sold and conveyed such J. J. Sutherland interest to Edward Welch. That on January 5, 1878, H. F. Lake sold and conveyed his interest to Hugh McCaffrey and Henry Suessenbach, two of the plaintiffs herein. That on the 29th day of January, 1878, Edward Welch, Frank T. Sutherland, Hugh McCaffrey, and Henry Suessenbach filed in the office of the register of deeds of Lawrence county, and had recorded in Book B, Miscellaneous Records, of said office, at page 324, an instrument in words and figures following, to-wit, as an amended location certificate of said placer claim No. 15:

"Notice is hereby given that the undersigned, for the purpose of more clearly defining the boundaries of placer claim No. 15, above discovery, on Whitewood mining district, in Lawrence county, Dakota territory, do on this 28th day of January, 1878, file this, our amended certificate, and described more particularly as per survey of the annexed field-notes.

[Signed]  "EDWARD WELCH.
"FRANK T. SUTHERLAND.
"HUGH McCAFFREY.
"HENRY SUESSENBACH."

Appended to this were field-notes by Henry Rholeder, surveyor, showing courses and distances, and describing the tract as containing three and forty-six one-hundredths acres. That on the 15th day of May, 1878, the said F. T. Sutherland, Hugh McCaffrey, Henry Suessenbach, and Edward Welch, by Frank Welch, administrator, the said Edward Welch having in the mean time died, filed in the United States land-office at Deadwood, D. T., an application for patent for said placer claim No.

15, above discovery. The application to enter was sworn to by said Frank T. Sutherland. In said application the said Sutherland, McCaffrey, Suessenbach, and Welch traced their title to and claimed said entry under and by virtue of said location of said placer claim, made the 16th day of March, 1877, by said Noah Siever, Edward Durham, William Moore, and Thomas Clifton heretofore stated, and claimed the right to make said entry and obtain title to said premises under and by virtue of said location, and there was appended to said application, as a part thereof, an abstract of title from the records of the Whitewood mining district, as follows:

*"Abstract of Title—Claim No. 15.*

"Claim No. 15, above discovery, was located January 16, A. D. 1876, by G. W. Wilkinson. See Book A, page 36. August 19, 1876, one-half interest relocated by Edward Durham, Noah Siever, Thomas Clifton, and William Moore. See Book A, page 69. March 22, 1876, contract to transfer for work to J. A. Hamilton, if filled. See Book A, page 99. July 11, 1876, bill of sale from W. A. Gamble and A. Stein to T. Clifton and W. Moore, one-half interest. See Book A, page 151. March 15, 1877, relocated by J. H. McCutcheon. See Book A, page 216. March 16, 1877, relocated by Noah Siever, E. Durham, Thomas Clifton, and William Moore. See page 216. June 26, 1877, bill of sale from Noah Siever, E. Durham, Thomas Clifton, and William Moore to F. T. Sutherland, Henry Lake, and J. J. Sutherland. See page 257. July 25, 1877, bill of sale for one-third interest from J. J. Sutherland to F. T. Sutherland."

From the office of the register of deeds the following:

*"Abstract of Title—Placer Claim No. 15, above discovery, Whitewood Placer Mining District, Lawrence County, Dakota Territory.*

"Edward Welch, Frank T. Sutherland, Hugh McCaffrey, and Henry Suessenbach, relocators. Certificate and survey dated

January 28, 1878; filed January 29, 1878; recorded in Book B, page 324. Amended location certificate with field-notes of survey attached. F. T. Sutherland to Edward Welch. Deeds dated July 25, 1877; acknowledged July 25, 1877; filed July 25, 1877; consideration, two thousand dollars; an undivided one-third interest. H. F. Lake to Hugh McCaffrey and Henry Suessenbach. Deed dated January 5, 1878; acknowledged January 5, 1878; filed January 17, 1878; recorded in Book F, page 152; consideration, one thousand dollars; an undivided one-third interest."

That thereafter such proceedings were had pursuant to said application for patent, as hereinbefore stated. That on July 16, 1878, an entry and purchase of said placer claim No. 15, above discovery, was made at said United States land-office at Deadwood, Dak., in the name of said F. T. Sutherland, Hugh McCaffrey, Henry Suessenbach, and Frank Welch, administrator of Edward Welch, said claim being designated in the entry and purchase as "mineral lot No. 86." Thereafter, pursuant to such entry and purchase, patent of the United States issued for said mineral lot No. 86 to said F. T. Sutherland, Hugh McCaffrey, Henry Suessenbach, and the heirs of Edward Welch, which patent bears date February 15, 1882, and was filed for record August 21, 1882, and recorded in Book No. 20, page 15, of the records of the register of deeds' office, in said Lawrence county, the said F. T. Sutherland, patentee, being the same F. T. Sutherland, one of the purchasers of said placer claim from Siever, Durham, Moore, and Clifton. That on the 16th day of July, 1878, said F. T. Sutherland sold and conveyed all his right, title, and interest in and to said placer claim No. 15 to Hugh McCaffrey and Henry Suessenbach, by deed of that date, filed for record July 21, 1882, and recorded in Book No. 20, page 428, of the records of said register of deeds' office. That on or about the 5th day of August, 1882, the heirs of Edward Welch, to-wit, Samuel Welch, Mary Welch, Lydia Welch, and Mary Franklin, sold and conveyed all their interest in said pla-

cer claim No. 15 to Henry Suessenbach, by deed of that date, filed for record August 5, 1882, and recorded in Book No. 26, page 75, of the records of said office. That on or about August 10, 1882, Henry Suessenbach and Hugh McCaffrey sold to Daniel McLaughlin and William R. Steele, by deed of that date, an undivided one-fourth interest in and to certain portions of said mineral lot No. 86, including the premises in dispute. That the ground claimed by the defendant under the chain of title set out in this statement of facts is identical with that described in the complaint and claimed by the plaintiffs as a part of mineral lot No. 86. That the defendant has occupied the said lot continuously since its organization in 1878, up to this time. That on September 26, 1879, the building thereon erected by the said Durham, Moore, Hamilton, and Scott, and sold with the lot to the said Stebbins and Hoffman, was destroyed by fire, and thereupon the defendant immediately re-erected on the same ground, and had finished and ready for occupancy, January, 1880, a two-story brick building, 21 by 70 feet, of the value of $10,000, which since January 1, 1880, has been continuously occupied by the defendant as a bank and for offices. That at the time of each and every of the conveyances to the plaintiffs, they, the plaintiffs, had full notice and knowledge of the claim of title by the said Stebbins and Hoffman and by the defendant bank. That the respondent has been at all times ready and willing and is now ready and willing to pay its just and full proportion of all the expenses attending the procuring of the patent from the United States. That the title acquired by the plaintiffs, under the patent from the United States, came to them through the location of said placer claim No. 15, made by the said Noah Siever, Edward Durham, William Moore, and Thomas Clifton, March 16, 1877, no other location of said placer claim No. 15 having been made by the said plaintiffs or their grantors, or any of them.

The foregoing facts are sustained by the evidence, with the exception of the finding that Sutherland, Lake, and Sutherland agreed with Noah Siever and his associates to protect and respect

the title and possession of Stebbins and Hoffman. We are of the opinion, however, that it was not necessary for the trial court to find that there was such an agreement in order to sustain the judgment which it rendered. The appellants, at the argument, insisted upon four principal points for a reversal of the judgment: (1) That the respondent, or its grantors, never obtained any interest in the premises in controversy, for the reason that at the time of the alleged transfer by the original locators of placer claim No. 15, above discovery, the title to said land and premises was in the United States; (2) that, admitting that respondent, through its grantors, obtained an interest in said mining claim, the said interest had been lost by failure to adverse the claim of appellants' grantors when they applied through the United States land-office for a patent for said mining claim. (3) That the court erred in admitting in evidence the transcript of the proceedings had in the United States land-office when the appellants' grantors applied for a patent, and also in admitting in evidence the mining rules and regulations of Whitewood mining district; (4) that the court erred in discharging the jury from the case.

It is now believed to be the settled law that a mining claim, concerning which all the laws, rules, regulations, and customs governing the same have been complied with, is property, and capable of being transferred, mortgaged, and inherited. In *Forbes* v. *Gracey*, 94 U. S. 766, the validity of the law of the state of Nevada, providing for the taxation of mining claims, was in question. It was insisted against the validity of the law that it was an attempt by the state of Nevada to tax the property of the United States. Justice MILLER, in delivering the opinion of the court holding such a law valid, said: "In the latter, also, such right as the mining laws allow, and as congress concedes, to develop and work the mines, is property in the miner, and property of great value. That it is so is shown most clearly by the conduct of the mining corporation in whose interest this suit is brought, which, for the purpose of evading this tax, permits its investment in this mine, said to be worth

from fifty to a hundred millions of dollars, to rest on this claim, this mere possessory right, when it could, at a ridiculously small sum compared with the value of the mine, obtain the government's title to the entire land, soil, mineral, and all. These claims are the subject of bargain and sale, and constitute very largely the wealth of the Pacific coast states. They are property in the fullest sense of the word, and their ownership, transfer, and use are governed by a well-defined code or codes of law, and are recognized by the states and the federal government. This claim may be sold, transferred, mortgaged, and inherited without infringing the title of the United States." See, also, *Belk* v. *Meagher*, 104 U. S. 279, where it is said that "a mining claim perfected under the law is property in the highest sense of that term, which may be bought, sold, and conveyed, and will pass by descent." The language of the court in the case of *Noyes* v. *Mantle*, 127 U. S. 351, 8 Sup. Ct. Rep. 1132, is so applicable to this case and the point under consideration that we cannot do better than to quote therefrom. The court says: "Section 2322 of the Revised Statutes, re-enacting provisions of the act of congress of May 10, 1872, (17 St. 91,) declares that the locators of mining locations previously made, or which should thereafter be made, on any mineral vein, lode, or ledge on the public domain, their heirs and assigns, where no adverse claim existed on the 10th of May, 1872, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations so long as they comply with the laws of the United States, and with state, territorial, and local regulations not in conflict with those laws, governing their possessory title. There is no pretense in this case that the original locators did not comply with all the requirements of the law in making the location of the Pay Streak lode mining claim, or that the claim was ever abandoned or forfeited. They were the discoverers of the claim. They marked its boundaries by stakes, so that they could be readily traced. They posted the required notice, which was duly recorded in compliance with the regulations of the district. They had thus

done all that was necessary under the law for the acquisition of an exclusive right to the possession and enjoyment of the ground. The claim was thenceforth their property. They needed only a patent of the United States to render their title perfect, and that they could obtain at any time upon proof of what they had done in locating the claim, and of subsequent expenditures to a specified amount in developing it. Until the patent issued the government held the title in trust for the locators or their vendees." It may be proper here to say that by section 2329, Rev. St. U. S., placer mining claims are subject to entry and patent under like circumstances and conditions, and upon similar proceedings, as are provided for vein or lode claims. That the mining location of Siever, Durham, Moore, and Clifton, on placer claim No. 15, was a valid one, is not disputed in the case at bar, nor could it be, except by the United States, for the reason that it was the location which resulted in the issuance of the patent through which both the appellants and respondent deraign their title. The certificate signed by Welch, Sutherland, McCaffrey, and Suessenbach, and filed in the office of the register of deeds of Lawrence county, on January 29, 1878, was not a relocation of placer claim No. 15, above discovery, but was, as its language imports, an amended certificate "for the purpose of more clearly defining the boundaries" of said claim. It will not do for the appellants to say that they claim under a patent of the United States, and not under the original location. If the United States, prior to the issuance of the patent for placer claim No. 15, held the legal title of said claim in trust for the original locators and their vendees, then the legal title to a portion of said mining claim was held in trust by the United States for the grantors of the respondent and their vendees. The entry at the United States land-office, and the patent issued in pursuance thereof, was burdened with this trust, and the same may be enforced against any person claiming under the patent who can be charged with notice of it. It is further objected that the respondent and its grantors, subsequent to the transfer of the premises in controversy from Siever, Duraham, Moore, and

Clifton, and Siever, Durham, Hamilton, and Scott, did not improve the premises in question, as required by the laws and customs regulating improvements on mining claims. This objection cannot be urged, as the respondent does not pretend that its rights rest upon the fact that it and its grantors have made the premises in controversy an independent mining claim, but that it is the owner of said placer claim No. 15 to the extent of the premises in controversy, and that the fact as to whether or not the laws, regulations, and customs were complied with in relation to placer claim No. 15, of which the premises in question were a part, has been settled by the issuance by the United States of a patent for said claim. We are therefore of the opinion that by the conveyances set forth in the findings, and the possession delivered thereunder Stebbins and Hoffman, and their vendee, the respondent, obtained an interest in said placer claim No. 15, above discovery, co-extensive with the premises in controversy, the legal title to which was held in trust by the United States for the benefit of the grantors of respondent and their vendees, and that, the appellants and their grantors having notice of the title and possession of respondent and its grantors, said trust may be enforced against them, providing there is no other legal impediment.

The point most strenuously urged at the argument, and which is insisted by appellants to be fatal to the rights of the respondent, if any existed, was the point that the respondent had lost its interest in placer claim No. 15, above discovery, by the failure of William R. Stebbins to file an adverse claim in the local United States land-office at the time that Sutherland, McCaffrey, Suessenbach, and Welch entered placer claim No. 15 for patent. Among the various requirements of the laws of the United States regulating the mode of entering a mineral claim is one which requires that a notice that the application has been made to enter the land shall be published for the period of 60 days in a newspaper, to be designated by the register of the land-office as being nearest such claim. The law also provides, (section 2325, Rev. St. U. S.:) "If no adverse claim shall have been filed with

the register and the receiver of the proper land-office at the expiration of the sixty days of publication, it shall be assumed that the applicant is entitled to a patent, upon the payment to the proper officer of five dollars per acre, and that no adverse claim exists, and thereafter no objection from third parties to the issuance of a patent shall be heard, except it be shown that the applicant has failed to comply with the terms of this chapter." It is further provided (section 2326, Rev. St. U. S.) that "where an adverse claim is filed during the period of publication it shall be upon oath of the person or persons making the same, and shall show the nature, boundaries, and extent of such adverse claim, and all proceedings, except the publication of notice, and making and filing of the affidavit thereof shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction or the adverse claim waived. It shall be the duty of the adverse claimant within thirty days after filing his claim to commence proceedings in a court of competent jurisdiction to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim." We are of the opinion that to hold that the interest of respondent's grantor was an adverse claim, within the meaning of the law above quoted, would be to wholly misconceive the relation existing between the applicants for the patent and the grantor of the respondent, William R. Stebbins. The claim of William R. Stebbins to a portion of placer claim No. 15 being traced to and from the same location upon which the right of the applicants for a patent rested, was not an adverse claim; it was a portion of the possessory title by which the applicants sought to obtain a patent for placer claim No. 15. Stebbins could get no legal title to the portion of the said claim except through a patent from the United States based upon the original location of Siever, Durham, Moore, and Clifton. He was therefore interested in having the patent issue, and had a right to rely upon the record title of the claim being truly presented to the authorities having charge of the issuance of said patent.

This, it appears, was not done. The abstract of the record title to said claim, as furnished to the officers of the land-office, wholly omitted the record concerning the premises in controversy, and, whether said omission was intentional or not, it was a fraud committed upon the United States and William R. Stebbins, and it is fair to presume that had the abstract furnished by the applicants shown the true state of the title to said placer claim, that William R. Stebbins would have been one of the grantees in the patent. It may be said, also, that Stebbins, having succeeded to the interest of his grantors, furnished a portion of the consideration for which the patent was issued. The bill of sale from Siever, Durham, Moore, and Clifton did not and could not convey the interest that they had previously conveyed to Stebbins and Hoffman, for the reason that they could not convey more than they owned. No parallel case was cited to the court at the argument upon the point now under consideration, but since the argument the case of *Hunt* v. *Patchin*, 35 Fed. Rep. 816, decided by the circuit court for the district of Nevada, has been reported. In that case Hunt filed a bill in equity to establish a trust in three mining claims in favor of himself, and to compel a conveyance to himself of such an interest therein as he might establish. The facts in the case were as follows: Hunt and Patchin were joint owners of three mining claims in Nevada, and, finding it inconvenient to raise money sufficient to pay the taxes and perform the necessary work to prevent a forfeiture, determined to relocate said claims. The relocation was made, but in the name of Patchin alone. The court found that it was understood, at least by Hunt, that although the relocation was made in Patchin's name, the location was for the benefit of both, and that Hunt furnished part of the money required to pay the expense of obtaining the patent. Patchin produced and obtained patent for the mining claims in his own name. SAWYER, C. J., in disposing of the point made by the defendant that Hunt had lost any right he had by failure to adverse the application of Patchin for a patent, said: "But one other point has sufficient plausibility to require notice. After this bill was

filed defendant applied to enter the land as mining ground, advertised in pursuance of the statute, and, no protest having been made, in due time he paid the purchase money, and a certificate of entry was issued to him. It is now insisted that as complainant did not protest and then bring suit to establish his right within the time prescribed by statute, he waived all adverse claim, and the entry is conclusive. But it was on this very title, which defendant in part holds in trust, that he obtained his certificate of entry. It was on these relocations which defendant held in trust that he proceeded, and the entry gives effect to the relocation with the trust attached. This suit was pending at the time of the application for purchase, to establish, not the legal title, but a trust in it. This claim by complainant of a trust was not adverse to the possessory title upon which the entry was made, but a part of that title, and the trust which had attached before the entry followed the title upon the entry, based upon the possessory title, of which it was a part. The complainant is entitled to the benefit of this entry to the extent of the trust." We think that the reasoning of the learned judge may be applied to the case at bar, and therefore conclude that the claim of Stebbins was not adverse within the meaning of the law.

The admission of the mining rules of Whitewood mining district, and also the transcript of the proceedings had in the land-office when the application was made to enter placer claim No. 15, in evidence, was not error, as they were not introduced for the purpose of impeaching the patent, but to show that the legal title had not by reason of accident, fraud, or mistake passed to the true owners; and the fact that respondent, in order to establish his right to have the legal title of the premises in question controlled for his benefit, had to introduce the same evidence that was introduced by the applicants when the land was entered for patent, is another strong reason why the claim of Stebbins was not an adverse claim.

Actions under the system of pleading prevailing in the code states, and bills in equity where the chancery jurisdiction is sep-

arately exercised for the purpose of establishing trusts in patented land, are now of common occurrence in the states and territories where the public land is being disposed of by the United States, and the principle invoked to establish such trust was well known to the common law in equity jurisprudence, and is plainly expressed in section 1297 of our Civil Code, which reads as follows: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained for the benefit of the person who would otherwise have had it." See, also, *Lakin* v. *Mining Co.*, 25 Fed. Rep. 337.

The course pursued by the court in relation to discharging the jury was not error. Under the system of pleading prevailing in this territory equitable defenses to an action of ejectment may be set up by way of counter-claim, and when so set up they assume the character of a suit in equity, and it is the proper practice for the court to determine the equitable issues first, and, having determined them in favor of respondent, there was nothing for the jury to do. As supporting this mode of proceeding, see *Dupont* v. *Davis*, 35 Wis. 631–639; *Ingles* v. *Patterson*, 36 Wis. 373–376; *Bartlett* v. *Judd*, 21 N. Y. 200–203; Pom. Rem. §§ 97, 737, 746, 764, 792; *Lombard* v. *Cowham*, 34 Wis. 490, 492; Code Civil Proc. § 119, subd. 2; *Tabor* v. *Mackkee*, 58 Ind. 290; *Cavalli* v. *Allen*, 57 N. Y. 508, 514; *Arguello* v. *Edinger*, 10 Cal. 150; *Estrada* v. *Murphy*, 19 Cal. 248, 272.

In conclusion, we think that the facts as exhibited by the record present a very proper case for equitable relief. No other error appearing, the judgment of the district court must be affirmed.