(No. 6808.   January 14, 1941.)

INDEPENDENCE PLACER MINING COMPANY, LTD., a Corporation, Respondent, v. HENRY HELLMAN, ROBERT R. JOHNSON, LAURA HELLMAN and HENRY HELLMAN, Jr., Appellants.

[109 Pac. (2d) 1038.]

Rehearing denied February 24, 1941.

H. J. Hull, for Appellants.

Walter H. Hanson, for Respondent.

AILSHIE, J.—The respondent instituted this action against appellants to quiet its title to a group of placer mining claims totaling 124 acres. The issues, when fully made up, reduced the litigation to a controversy between the parties over the right of possession of 40 acres of this group covered by two locations claimed by appellants and named the "Lilly No. 1" and "Lilly No. 2"; the same ground being covered by respondent's two locations named "Rags" and "Patshes." The trial court found in favor of respondent as the owner of the latter two claims.

Paragraph VIII of the court's findings covers the crucial and essential facts on which the judgment of the court was resolved against appellants and in favor of respondent and is as follows:

"VIII

That during the years 1924 and to 1933 inclusive, the defendants and each and all of them failed to perform or have performed on the claims designated by them as the 'Lilly' and 'Lilly No. 2' or upon either of them, or on any ground in controversy herein, or on other ground for the benefit of said or either or any of said alleged claims any labor or improvements in mining or otherwise. That during said period of time the said defendants and each of them and all of them failed to keep the boundary lines of said alleged claims plainly marked or marked at all upon the ground, or to keep a notice posted upon either of said claims which would indicate any claim of ownership therein or thereto upon the part of the defendants or either or any of them, and that during said period of time neither of them did any act indicating a claim of ownership or of possession of, in or to said or either of said claims or any part thereof.

That whatever interest or ownership, if any, the defendants or either or any or all of them may have had in and to said ground in conflict with the property of plaintiff hereinbefore referred to was abandoned by them and each and every

and all of them, and that they did not go upon the property, manifest any ownership thereof or thereto from the year 1924 to 1933, and that during said period of time it was held by the plaintiff, claimed by it and protected by annual labor pursuant to law. In the month of September, 1925, the plaintiff, for the purpose of eliminating any question as to its title, ownership and rights of, in and to the ground embraced in the 'Moose' placer, caused the same to be relocated under the names of 'Rags' and 'Patches,' the 'Patches' being located by William Fahle and the 'Rags' by Fred J. Kelly. Said and each of said claims were legally located and thereafter by the locators thereof deeded by proper conveyance to the plaintiff, which, except as prevented by the defendants, has ever since been in possession thereof and has at all times claimed open, notorious and adverse possession thereof as to and against all the world and particularly the defendants and each of them.''

Our decision must turn on the conclusion that may be reached as to whether the evidence supports the material ultimate facts stated in the foregoing finding.

September 15, 1900, Simon Hellman, father of appellant Henry Hellman and grandfather of appellant Henry Hellman, Jr., went into a remote, rugged, mountainous, timbered region in the southeastern portion of what was then territory of Shoshone county and now included in Clearwater county and, arriving at a point approximately one and a fourth mile up Moose Creek above its confluence with Independence Creek, discovered deposits of placer gold and thereupon, in conjunction with two others, made a location of a forty-acre claim under the name of the ''Lilly.'' The validity of the notice is questioned on grounds of insufficient description and tie to a ''natural object or permanent monument,'' and that it was not duly verified and recorded within the time and in the manner required by the state statute (secs. 46–602, 46–611 and 46–617, I. C. A.; see secs. 3104, 3120, and 3122, Rev. Stats. 1887). The view we take of the case on other issues will render it unnecessary to consider either the sufficiency of the location notice or the affidavits accompanying it for record.

Appellant, Henry Hellman, Sr., testified to going on the ground, with his father Simon Hellman, and mining and extracting gold, during the summer and fall of the years 1900–1917, 1920–1939, respectively; during the years 1918 and 1919 Arthur Houtchens was employed by Hellman and worked the claim. Hellman testified to doing the work and his testimony is corroborated by others who saw him outfitting, on the way, or working on the ground at different times.[1]

The positive, affirmative testimony of the witnesses named, that the Hellmans actually went on this ground each year and worked and panned out gold, is in a measure corroborated by the testimony of several witnesses who resided in Missoula (where Hellman resided), and either furnished supplies to Hellmans (or saw them being furnished); or saw Hellmans outfitting, making their annual preparations, and taking pack animals and leaving Missoula, ostensibly for this mining

| [1]Year | Workers on Claims | Corroborated in some respect by Testimony of |
|---|---|---|
| 1903–1906 | Simon and Henry Hellman | Manser (a miner) |
| 1903 | Simon Hellman | Levoie (miner) |
| 1904 | Sam Hellman | Jack Houtchens (dairyman) |
| 1907 | Henry Hellman | Hagen (laundry owner) |
| 1910 | Simon and Henry Hellman | Houtchens (A.) caretaker city park—forester |
| 1912 | Henry Hellman | Houtchens " |
| | " " | Kateron (farmer and forester) |
| 1913 | Henry Hellman | " |
| | Simon Hellman | " |
| 1914 | Henry Hellman | Ehret (miner) |
| | " " | Kateron |
| | " " | Houtchens (J.) |
| 1915 | " " | Kateron |
| 1916 | " " | Fahle (Pres., respondent company) |
| | " " | Kateron |
| | Simon Hellman | Houtchens (A.) |
| 1917 | Simon Hellman | Fahle |
| | Henry Hellman | Laura Hellman (wife) |
| 1918 | Henry Hellman | Fahle |
| 1919 | Houtchens Bros. did assessment work on claims Houtchens (A.) | |
| 1920 | Henry Hellman | Fahle (ambiguous) |
| 1921 | Henry Hellman | Taylor, R. (miner) |

property; and who testified to their return in the fall, each year, with gold.

Ehret, an unfriendly adverse witness to the Hellmans, testified: That in 1914 he saw Henry Hellman working on this property. He further said that the Hellmans were in there on their property in 1923 and 1924; and "that in the summer of *1927* or *1925*" he was in there and saw Hellman put up one of the corner stakes that had been down.

▮ The only denial or rebuttal to this testimony on behalf of respondent is of a purely negative character and consists in the testimony of several persons who passed over this ground, or along the nearby trail, in the course of the years, and who testified that *they did not see any of the*

| Year | Workers on Claims | Corroborated in some respect by Testimony of |
|------|-------------------|------------------------------|
| 1922 | Henry Hellman | Taylor, R. |
|  | " " | Laura Hellman |
| 1923 | Henry Hellman | Ehret |
|  | " " | Laura Hellman |
| 1924 | " " | Stennet (cook) |
|  | " " | Ehret |
|  | " " | Houtchens (J.) |
| 1925 | " " | Stennet |
|  | " " | Ehret |
|  | " " | Houtchens (J.) |
| 1926 | Henry Hellman | Stennet |
|  | " " | Houtchens (J.) |
| 1927? | " " | Ehret |
| 1933 | " " | Ehret |
| 1934 | " " | Ehret |
|  | " " | Laura Hellman |
| 1935 | " " | Kateron |
|  | " " | Laura Hellman |
| 1936 | " " | Kateron |
|  | " " | Laura Hellman |
| 1937 | " " | Kateron |
|  | " " | Laura Hellman |
| 1938 | " " | Kateron |
|  | " " | Laura Hellman |
|  | " " | DeLong (miner) |
|  | " " | Kinley (miner) |
| 1939 | " " | Taylor |

*Hellmans on the ground or in that vicinity or doing any work there.* Most of them, however, did admit seeing evidence of work having been done. Negative evidence of such character is not sufficient to refute positive proof of facts such as here involved. (*Beaver v. Morrison-Knudsen Co.*, 55 Ida. 275, 289, 41 Pac. (2d) 605; *Arneson v. Robinson*, 59 Ida. 223, 234, 82 Pac. (2d) 249; *Young v. Herrington*, 61 Ida. 183, 99 Pac. (2d) 441, 444.)

It is argued that the mere fact, of Hellman's outfitting and leaving each summer and returning in the fall with gold, does not prove that he worked on this particular property or that he obtained the gold from these claims. While that statement, standing alone, is correct, nevertheless, the further fact that, from time to time during these years, the Hellmans were *seen on the property mining* and prospecting, and, in addition thereto, they from time to time *made and filed affidavits* of having done annual assessment work on the property, raises a presumption in support of the contention, that these annual trips were made *to this property* and that the gold dust they had on their return home each trip came from their mining operations on these claims.

It is urged, however, that these affidavits of the performance of annual labor are not in strict compliance with the statute authorizing the making and recording of such proof of labor. (Sec. 46–606, I. C. A.) If that contention be admitted for our present purposes, still the fact that they did make such affidavits from year to year, for many years *before any controversy arose over their title and right of possession,* is a persuasive circumstance showing that they had been actually on the ground and had at least done some work there; and it is certainly evidence that they were laying some claim to the property and that they did not in the meanwhile mean to abandon the same.

The contention that Hellman abandoned his claim to the property, by seeking and receiving a lease or permission from Fahle to prospect the ground in 1933 or 1934, is untenable, first, because it is denied and the attendant and surrounding circumstance of Hellman's occupation and working the ground disproves the contention, and second, because

the Rags and Patshes locations were made in 1925, some nine years before this alleged abandonment, at a time when the ground was not open to location.

The facts of the case seem to bring it within the purview of section 38, Title 30, U. S. C. A., providing that, where a person or association has held and worked a claim for a period equal to the time prescribed by the statute of limitations, of the state or territory where the claim may be situated, "evidence of such possession and working of the claims for such period" shall be sufficient to establish a right to a patent thereto under the federal statute.

We had occasion to construe and apply that provision of the federal statute in *Humphreys v. Idaho Gold Mines etc. Co.*, 2 Ida. 126, 140, 120 Pac. 823, 40 L. R. A., N. S., 817, and said:

"It seems to us that the provisions of sec. 2332 of the Revised Statutes of the United States are intended to obviate the necessity for proof of posting and recording a notice of location in cases where the claimant to mineral ground has been in the actual, open and exclusive possession of the ground for a period equal to that required by the local statute of limitations governing adverse possession of real estate. The adverse possession referred to in the statute is intended to supply the place of an abstract of title and such proofs as are furnished by the county recorder."

For cases to the same effect, see *Allen v. Laudahn*, 59 Ida. 207, 218, 81 Pac. (2d) 734; *McLean v. Ladewig*, 2 Cal. App. (2d) 21, 37 Pac. (2d) 502, 505; *Dalton v. Clark*, 129 Cal. App. 136, 18 Pac. (2d) 752; *Dripps v. Allison's Mines Co.*, 45 Cal. App. 95, 187 Pac. 448; *Springer v. Southern Pacific Co.*, 67 Utah, 590, 248 Pac. 819; *Glacier Mt. etc. Min. Co. v. Willis*, 127 U. S. 471, 8 Sup. Ct. 1214, 32 L. ed. 172.

It seems clear, from all the testimony in the case, that the Hellmans were in possession of, and did the work on, this property in 1925 and had done so continuously for more than ten years previous thereto; and that, at the time of the location of the Rags and Patshes Claims, the ground was not open to location. It has been the settled rule of law, with few exceptions, ever since the decision of the case of *Belk v. Meagher*, 104 U. S. 279, 26 L. ed. 735, that no

valid location or relocation can be made on a mining claim until the rights of the former locator have been finally forfeited or abandoned; and that an attempted location, made while previous location or segregation of the ground is still in force, is absolutely void. (*Ambergris Mining Co. v. Day,* 12 Ida. 108, 121, 85 Pac. 109; *Swanson v. Kettler,* 17 Ida. 321, 331, 105 Pac. 1059; affirmed in *Swanson v. Sears,* 224 U. S. 180, 32 Sup. Ct. 455, 56 L. ed. 721; *Alaska Consol. Oil Field v. Rains,* 54 Fed. (2d) 868, 870; see, also, 68 L. R. A. 836 (note c); *Bergquist v. West Virginia Copper Co.,* 18 Wyo. 234, 106 Pac. 673, 683; *Johnson v. Ryan,* 43 N. M. 127, 86 Pac. (2d) 1040, 1046; 1 Lindley on Mines, 3d ed., sec. 273; Morrison's Min. Rights, 16th ed., pp. 40, 144; American Min. Law (Bulletin No. 98), secs. 746, 806.)

██ One who has actual notice, that a prior locator is claiming a tract of mining ground and has done location work thereon and continued to do prospecting and assessment work on the property, is not in a position to make a valid location on such property. In such case he has notice that the ground is claimed by another and that so much of it as is claimed and occupied is no longer public domain subject to location; and he may not question the sufficiency of the original location or the character of the original occupant's title. (*Bismark etc. Mining Co. v. North Sunbeam Gold Co.,* 14 Ida. 516, 95 Pac. 14; *Flynn Group Mining Co. v. Murphy,* 18 Ida. 266, 279, 109 Pac. 851, 138 Am. St. 201; *Ninemire v. Nelson,* 140 Wash. 511, 249 Pac. 990.)

The ground claimed in this action by respondent is the "Patshes," located September 12, 1925, and the "Rags," located September 24, 1925. They were both located by N. J. Roy, an employee of respondent, who used the names of Fahle, President of respondent, and Fred J. Kelly, Roy's brother-in-law, as locators. The Patshes and Rags were not amended locations but appear to have been made and intended as original and independent locations of this ground. (*Zerres v. Vanina,* 134 Fed. 610, 150 Fed. 564.) In course of his cross-examination, Mr. Fahle said that this property was relocated "because it was taken over by Hellman and left go several years and everybody figured as though they [the Hellmans] had it, and we had it relocated." He further

said it was "taken over" by Hellman "about 1916." This alone, coming as it does from the president of respondent company, is an admission that from 1916 to 1925 *respondent had not claimed* or considered that it owned the claim and that, on the other hand, it had been "taken over by Hellman" and belonged to him.

The evidence shows without contradiction that the stakes set for the location of the Rags and Patshes claims were in close proximity to similar stakes used in marking the boundary of the Lilly No. 1 and Lilly No. 2, so that the locator of the Rags and Patshes could not have failed to see and know that another claim was located over the same ground. He certainly could not have failed to see the evidences of assessment and prospecting work on the ground.

■ Respondent urges objections to, and defects in, appellants' title which, if accepted as sound, would not in any way support its contention, for the reason that this is an action to quiet title to respondent's claims (Rags and Patshes) ; and it is well established that in such case *plaintiff must recover on the strength of his own title* which must be established by satisfactory, affirmative proofs; *he cannot recover on the weakness of his adversary's title.* (*Snowy Peak Mining Co. v. Tamarack & Chesapeak Mining Co.,* 17 Ida. 630, 107 Pac. 60; *Wing v. Wallace,* 42 Ida. 430, 435, 246 Pac. 8; *Harris v. Chapman,* 51 Ida. 283, 293, 5 Pac. (2d) 733; *Federal Land Bank v. Union Central L. Ins. Co.,* 51 Ida. 490, 498, 6 Pac. (2d) 486.)

■ It is contended by respondent that the claim of adverse possession asserted by appellants must fail because they did not show they had paid all taxes assessed against the property during the period they had held it adversely. It is true the statute requires a showing of payment of taxes but respondent has obviated the necessity for appellants showing such fact by proving, and the court finding, that *no taxes had been levied against the property during the period respondent asserts ownership of the claims;* and since the Lilly No. 1 and Lilly No. 2 cover the same and identical ground claimed by the Rags and Patshes locations, it follows that further proof was unnecessary.

It has also been pointed out by respondent that no proper forfeiture notice was ever given to Hellman's co-owners and therefore Hellman's title was not good to the entire property. Whatever merit there may be in that contention cannot avail respondent anything in the present case but is rather a question which might arise between Hellman and his former co-owners. The validity or invalidity of the forfeiture notice neither strengthens nor weakens respondent's title.

We conclude that the evidence is not sufficient to support a finding and decree quieting respondent's title to the Rags and Patshes claims.

Judgment reversed and case remanded to make findings and enter judgment in accordance with the views herein expressed. Costs to appellants.

Budge, C. J., and Givens and Holden, JJ., concur.

Morgan, J., deeming himself disqualified, did not participate in this decision.