#26982-aff in pt, rev in pt & rem-SLZ & GAS

**2015 S.D. 30**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

PETE LIEN & SONS, INC,
a South Dakota Corporation,                                   Plaintiff and Appellee,


        v.

STEVE ZELLMER; CESAR CONDE;
SUNSET PROPERTIES, LLC, a
Colorado Corporation; GCC OF
AMERICA, INC., a Delaware
Corporation; and GCC DACOTAH,
INC., a South Dakota Corporation,                             Defendants and Appellants.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RANDALL L. MACY
Judge

* * * *

LARRY M. VON WALD of
Beardsley, Jensen & Von Wald,
   Prof., LLC
Rapid City, South Dakota                          Attorneys for plaintiff
                                                  and appellee.


KYLE L. WEISE
JAMES S. NELSON of
Gunderson, Palmer, Nelson
   & Ashmore, LLP
Rapid City, South Dakota                          Attorneys for defendants
                                                  and appellants.

* * * *

                                                  ARGUED ON
                                                  OCTOBER 8, 2014
                                                  OPINION FILED **05/13/15**

ZINTER and SEVERSON, Justices

[¶1.] **Justice Severson delivers the opinion of the Court, holding that title to mining claims CHUCK NO. 2012-02, CHUCK NO. 2012-03, CHUCK NO. 2012-04, CHUCK NO. 2012-05, CHUCK NO. 2012-06, CHUCK NO. 2012-07, CHUCK NO. 2012-08, CHUCK NO.2, CHUCK NO.3, CHUCK NO.4, CHUCK NO.5, CHUCK NO.6, and CHUCK NO.7 is quieted in Pete Lien & Sons, Inc. Chief Justice Gilbertson concurs. Justices Zinter and Wilbur and Retired Justice Konenkamp concur in result.**

[¶2.] **Justice Zinter delivers the opinion of the Court, holding that title to mining claim CHUCK NO. 2012-01, a.k.a. CM-5, is quieted in GCC Dakota Inc. Justice Wilbur and Retired Justice Konenkamp concur. Chief Justice Gilbertson and Justice Severson dissent.**

[¶3.] **SEVERSON, Justice, writing the opinion regarding mining claims CHUCK NO. 2012-02, CHUCK NO. 2012-03, CHUCK NO. 2012-04, CHUCK NO. 2012-05, CHUCK NO. 2012-06, CHUCK NO. 2012-07, CHUCK NO. 2012-08, CHUCK NO.2, CHUCK NO.3, CHUCK NO.4, CHUCK NO.5, CHUCK NO.6, and CHUCK NO.7.**

[¶4.] GCC Dacotah, Inc. and Pete Lien & Sons, Inc., claim mineral rights to the same 280 acres of U.S. Forest Service land in Lawrence County, South Dakota. Pete Lien & Sons, Inc. (PLS) filed a complaint to quiet title on September 14, 2012. Both parties subsequently moved for summary judgment on October 16, 2013, which the circuit court granted to PLS on January 2, 2014. The circuit court held

that GCC Dacotah, Inc. (GCC) had failed to follow federal and state law regarding the proper location of placer mining claims. GCC appeals.

## Background

[¶5.] On April 6, 2007, Steve Zellmer, then president of GCC, signed and filed with the Lawrence County Register of Deeds fourteen placer mining claims. Throughout this opinion Appellants will be interchangeably referred to as GCC or Zellmer. Each claim covers twenty acres of U.S. Forest Service land in Lawrence County for a total of 280 acres. That same day, Gene Nelson, an employee of GCC, placed one discovery monument containing notices of the fourteen claims on the northeast corner of the 280 acres. Zellmer transferred the claims by quitclaim deed on June 6, 2007, to Sunset Properties, LLC, a company owned by GCC of America, Inc. Sunset Properties, LLC recorded the deed on September 11, 2007.

[¶6.] On April 20, 2007, Sam Brannan, on behalf of PLS, posted notices of location certificates on six placer mining claims covering some of the same 280 acres claimed by Zellmer. PLS marked each twenty-acre section with corner and side-center posts.[1] Notices of location were attached to discovery monuments at each claim. On February 13, 2012, Sam Brannan made discovery of eight more placer mining claims and marked the boundaries in the same manner as in 2007. These eight claims were also previously claimed by Zellmer. As a result, both GCC and PLS now claim that they each have rights to the same 280 acres.

---

1. Side posts are placed half way down each side of each twenty-acre section for a total of eight posts to mark a twenty-acre section.

[¶7.] PLS filed a complaint to quiet title on September 14, 2012, alleging that Zellmer did not follow federal or state law to properly locate his placer mineral claims and the property remained open for claims. GCC replied, alleging that only one monument is needed and that the notice of the fourteen claims in the monument gave actual notice of his rights. Furthermore, GCC argued that anyone trying to claim the same mineral rights had constructive notice of GCC's claim because the claims were filed with the county register of deeds. As a result, GCC argued, no future claimants could obtain an interest in the same minerals.

[¶8.] PLS and GCC each moved for summary judgment. The circuit court granted summary judgment to PLS on January 2, 2014. The court found that federal regulations require the location of the placer mining claims to be staked and monumented at the corners of each twenty-acre claim. The court also found that federal regulations provide that the procedure to stake and monument surface mining claims must also meet any state requirements not inconsistent with federal law. Further, it found SDCL 45-4-3 requires additional posts to mark the centers of each claim's sides, for a total of eight posts on each claim. The court found that Zellmer did not follow federal or state law to claim the minerals; however, it found that PLS followed all applicable laws and was therefore entitled to the mining claim subject to the paramount title of the United States.

[¶9.] GCC appeals, raising the following issues:

(1) Whether the court erred in deciding that GCC's fourteen placer mineral claims on 280 acres of U.S. Forest Service property in Lawrence County, South Dakota, were invalid.

(2)      Whether GCC's placer mineral claims precluded PLS's subsequent claims.

## Standard of Review

[¶10.]      The circuit court in this case interpreted federal and state statutes when it granted summary judgment.

> Our standard of review on a grant or denial of summary judgment is well settled. Summary judgment is proper where[] the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. SDCL 15-6-56(c).

*Luther v. City of Winner*, 2004 S.D. 1, ¶ 6, 674 N.W.2d 339, 343. "We view all reasonable inferences drawn from the facts in the light most favorable to the [nonmoving] party." *Roden v. Gen. Gas Co. of Wis.*, 2003 S.D. 130, ¶ 5, 671 N.W.2d 622, 624. Statutory interpretation is a question of law reviewed de novo. *Martinmaas v. Engelmann*, 2000 S.D. 85, ¶ 49, 612 N.W.2d 600, 611.

## Analysis

[¶11.]      *I.*      *Whether the court erred in deciding that GCC's fourteen placer mineral claims on 280 acres of U.S. Forest Service property in Lawrence County, South Dakota, were invalid.*

[¶12.]      Federal law allows citizens to explore and purchase mineral rights on certain United States property. 30 U.S.C. § 22 (2012). In order to claim an interest in minerals on federal lands open to such exploration, citizens must follow both federal law and state law "so far as the [state laws] are applicable and not inconsistent with the laws of the United States." *Id.* A citizen who has discovered minerals on U.S. land must properly locate the claim. *Locate* is a term of art within mining laws. Locating a claim means "(1) establishing the exterior lines of a mining

claim or site on lands open to mineral entry to identify the exact land claimed; and

(2) [r]ecording a notice or certificate of location as required by state and Federal

law[.]" 43 C.F.R. §§ 3832.1(a)(1)-(2) (2014). Additional state and federal

requirements provide the manner in which the exterior lines are to be established

and claims are to be recorded. *See id.* § 3832.1(b)(1) (providing that further

requirements regarding location and recording are found within the regulations); 30

U.S.C. § 28 (2012) (allowing states to "make regulations not in conflict with the laws

of the United States, . . . subject to the following requirement[]: [t]he location must

be distinctly marked on the ground so that its boundaries can be readily traced"); *id.*

§ 35 (2012) (placer claims "shall be subject to entry and patent, under like

circumstances and conditions, and upon similar proceedings, as are provided for

vein or lode claims; . . . no such location shall include more than twenty acres for

each individual claimant"); 43 C.F.R. § 3832.11 (2014) (a proper location includes:

discovery, staking and monumenting "the corners of a mining claim or site which

meets applicable state monumenting requirements[,]"[2] posting "the notice of

location in a conspicuous place on the claim or site" with proper information,

recording in the local recording office and Bureau of Land Management State Office

(BLM), following state law, and complying with other specific requirements

applicable to the type of claim).

---

2.     43 C.F.R. § 3832.11(c)(2): "To locate a claim or site, you must—(2) Stake and monument the corners of a mining claim or site which meets applicable state monumenting requirements and the size limitations described in § 3832.22 for lode and placer claims, § 3832.32 for mill sites, and § 3832.42 for tunnel sites[.]"

[¶13.] Federal law provides for different types of mining claims; the two types at issue in this case are "placer" and "lode or vein" claims. A placer claim covers "ground within defined boundaries which contains mineral in its earth . . . ; ground that includes valuable deposits not in place, that is, not fixed in rock, but which are in a loose state, and may in most cases be collected by washing or amalgamation without milling." *United States v. Iron Silver Mining Co.*, 128 U.S. 673, 679, 9 S. Ct. 195, 197-98, 32 L. Ed. 571 (1888). In contrast, vein or lode claims cover "lines or aggregations of metal embedded in quartz or other rock in place." *Id.* The fourteen claims over limestone in this case are placer claims.

*South Dakota Mining Laws*

[¶14.] The Dakota Territory first enacted laws regarding mines and mining claims in 1875, before South Dakota became a state. 1875 Dakota Sess. Laws ch. LXVII, § 6.[3] Many of those laws remain largely the same today and are codified at SDCL chapter 45-4. Our statutes only refer to placer claims within SDCL 45-4-20, which makes it a misdemeanor to associate with another to obtain possession of mining claims by force, violence, threat of violence, or stealth. The other provisions within the mining chapter mention lode claims or just generally refer to mining claims. Because of the lack of a specific reference to placer claims within chapter 45-4, the parties dispute whether SDCL 45-4-3 governs the marking of a placer claim. SDCL 45-4-3 provides:

---

3. We cite to the enactments of the Dakota Territory legislative assembly as the equivalent of session laws today. However, we note that they were not referred to as session laws in 1875 but as "General Laws and Memorials and Resolutions of the Territory of Dakota."

> Surface boundaries shall be marked by eight substantial posts, hewed or blazed on the side or sides facing the claim and plainly marked with the name of the lode and the corner, end, or side of the claim that they respectively represent and sunk in the ground; one at each corner and one at the center of each side line and one at each end of the lode. If it is impracticable because of rock or precipitous ground to sink such posts, they may be placed in a monument of stone.

The circuit court held that this provision is consistent with federal law and applicable to placer claims as well as lode claims. The court concluded that GCC did not have a mining claim because Zellmer did not comply with this state requirement when locating his placer claims.

[¶15.]     We have not previously ruled on the scope of chapter 45-4. GCC asserts that none of the statutes found in chapter 45-4 apply to placer mineral claims. GCC notes the reference to a placer claim in SDCL 45-4-20 and argues that its inclusion demonstrates the Legislature's acknowledgement of a distinction between placer and lode claims. GCC further argues that SDCL 45-4-20 indicates that the Legislature intended to exclude placer claims entirely from chapter 45-4, and that if the rest of the statutes were meant to apply to placer claims those statutes would explicitly reference placer claims. To the contrary, there is nothing within chapter 45-4 to suggest that placer claims are not covered within the provisions. The statutes now and at enactment address all mining claims, not just lode or vein claims. To hold otherwise, that the entire section only applies to lode claims, would severely limit the scope of other provisions within chapter 45-4 that

do not specifically refer to lode claims.[4] That interpretation would be contrary to the plain meaning of the statutes, which by their terms, apply to all mining claims. Reading chapter 45-4 in a contrary way would eliminate all state requirements for federal mining claims that are not vein or lode claims. It is clear that the chapter was to have broad applicability to all mining claims.

[¶16.] Finding that chapter 45-4 applies to placer claims, the next question is whether the provisions within chapter 45-4 that specifically reference lode claims equally apply to placer claims. Federal law states in relevant part that placer claims

> *shall be subject to entry and patent*, under like circumstances and conditions, and upon similar proceedings, *as are provided for vein or lode claims*; but where the lands have been previously surveyed by the United States, the entry in its exterior limits shall conform to the legal subdivisions of the public lands. And where placer claims are upon surveyed lands, and conform to legal subdivisions, no further survey or plat shall be required, and all placer-mining claims located after the 10th day of May 1872, shall conform as near as practicable with the United States system of public-land surveys, and the rectangular subdivisions of such surveys . . . .

30 U.S.C. § 35 (emphasis added). This indicates that the federal scheme does not envision a mining system where separate provisions will always apply to either placer claims or vein and lode claims but not both. To the contrary, it indicates that absent provisions for placer claims, rules governing vein or lode claims will equally apply to placer claims. This reading is consistent with the structure of the federal

---

4. SDCL 45-4-7; SDCL 45-4-8; SDCL 45-4-13 to -17; SDCL 45-4-19; and SDCL 45-4-21 to -23 contain no reference to a lode or vein claim.

statutes and regulations which often apply uniformly regardless of the type of mineral claim.

[¶17.]     The Supreme Court of the Territory of Dakota, when determining the ownership of placer claims in Lawrence County, found the same. *Suessenbach v. First Nat'l Bank of Deadwood*, 41 N.W. 662, 667 (1889).[5]  The territorial court sustained the lower court's factual finding that a placer claim had been properly located. *Id.* at 666.  The court explained the locating parties had

> duly located, claimed, and appropriated . . . "Placer Claim No. 15[]" . . . in accordance with the laws of the United States, the local laws, and the customs, rules, and regulations of miners in said mining district, *by distinctly marking the surface boundaries of said claim so that they could be readily traced on the ground*; *by setting substantial stakes at each corner of said claim, and on the sides thereof*, with the name of the claim marked thereon and the name of the locators; and by putting a plain sign or notice at the points of discovery thereon, containing the name of the claim as "Placer Claim No. 15," above discovery, and the names of the locators . . . and the date of location . . . and by filing and recording a certificate of location in the records of the recorder of said Whitewood mining district.

*Id.* at 662-63 (emphasis added).  The court went on to explain the locators

> marked [the claim's] boundaries by stakes, so that they could be readily traced.  They posted the required notice, which was duly recorded in compliance with the regulations of the district.  They had thus done all that was necessary under the law for the acquisition of an exclusive right to the possession and enjoyment of the ground.

---

5.     In his writing Justice Zinter states that any reliance on this case is misplaced as the court did not decide whether the procedure applied to placer claims.  However, the approach the court used to determine placer claim ownership indicates that the procedure was not in dispute.  The parties and court recognized that a placer claim was located by the procedure as outlined in the opinion, which includes staking the corners and sides of the claim.

*Id.* at 667. *See also Strickland v. Commercial Mining Co.*, 104 P. 965, 966 (Or. 1909) (holding that even though state law "required the posting of a notice on the lode or vein of a quartz claim, but no provision was made for the locating of placer claims, or for the recording of notices thereof[,]" federal statutes made placer claims "subject to entry and patent under like circumstances and conditions, and upon similar proceedings as are provided for vein or lode claims" (citation omitted)). The territorial law the court applied in *Suessenbach* is substantially the same as our statute exists today.[6] Therefore, it is evident that the procedure to be followed in locating a placer claim is the same for that of a lode claim, absent a statute to the contrary. Placer claims are subject to the provisions of chapter 45-4 so long as those requirements are not inconsistent with federal law. SDCL 45-4-3 sets forth the procedure claimants must follow when marking the surface boundaries of placer claims.

[¶18.] GCC asserts that our reading of SDCL 45-4-3 is preempted because it imposes requirements inconsistent with federal law. GCC reads 30 U.S.C. § 35 as

---

6. *Compare* 1875 Dakota Sess. Laws ch. LXVII, § 6 ("Such surface boundaries shall be marked by eight (8) substantial posts, hewed or blazed on the side or sides, facing the claim, and sunk in the ground, to-wit: One at each corner, and one at the center of each side line, and one at each end of the lode. When it is impracticable on account of rock or precipitous ground to sink such posts, they may be placed in a monument of stone."), *with* SDCL 45-4-3 ("Surface boundaries shall be marked by eight substantial posts, hewed or blazed on the side or sides facing the claim and plainly marked with the name of the lode and the corner, end, or side of the claim that they respectively represent and sunk in the ground; one at each corner and one at the center of each side line and one at each end of the lode. If it is impracticable because of rock or precipitous ground to sink such posts, they may be placed in a monument of stone.").

requiring placer claims to be only mapped in conformity with the United States survey, not physically marked. The requirement of physically marking a claim that is controlled by legal subdivisions, GCC asserts, is not necessary when the lines of the claim are already controlled by the survey. However, federal law requires placer claims to conform "as near as practicable" to existing surveys and provides for situations where a claim cannot conform to legal subdivisions; therefore, the surface boundaries may be important in certain cases.[7] 30 U.S.C. § 35. Further, federal law does not say that boundaries need not be marked if there is a survey that governs the claim.[8] The law only says that "no further survey or plat shall be

-----

7.     30 U.S.C § 35 provides in relevant part:

> [W]here the lands have been previously surveyed by the United States, the entry in its exterior limits shall conform to the legal subdivisions of the public lands. And *where placer claims are upon surveyed lands, and conform to legal subdivisions, no further survey or plat shall be required*, and all placer-mining claims located after the 10th day of May 1872, *shall conform as near as practicable* with the United States system of public-land surveys, and the rectangular subdivisions of such surveys, and no such location shall include more than twenty acres for each individual claimant; *but where placer claims cannot be conformed to legal subdivisions, survey and plat shall be made as on unsurveyed lands . . . .*

(Emphasis added.)

8.     GCC asserts that recording a notice of location for the claim meets locating requirements because the notice contains the legal subdivision description per the federal survey. Such an approach conflates step two and step three of perfecting a mining claim. A proper claim includes (1) Discovery, (2) "Establishing the exterior lines of a mining claim[,]" (*see supra* ¶¶ 6, 12), (3) "Recording a notice or certificate of location as required by state and Federal law and by this part." 43 C.F.R. § 3832.1 (2014). The subdivision description is used to describe the claim when registering and recording and cannot eliminate the requirement of physically marking a claim. *Id.*

(continued . . .)

required[.]" *Id.* State statutes that require posting when a claim conforms to a survey are not inconsistent with the federal requirements. In fact, 43 C.F.R. § 3832.11(c)(2) provides that a locator must "[s]take and monument the corners of a mining claim or site which meets applicable state monumenting requirements[.]" SDCL 45-4-2 and SDCL 45-4-3 define the monument and post requirements in South Dakota. We do not require a new survey or plat; we simply require additional ground work to mark the claim's boundaries—regardless of whether it conforms to legal subdivisions or not.[9]

[¶19.] Not only is our reading of SDCL 45-4-3 consistent with federal law, it is mandated by such. Federal law "makes the manner of locating mining claims

_____

(. . . continued)

§ 3832.12(a)(1) explains the answer to the following question: "When I record a mining claim or site, how do I describe the lands I have claimed?" It states:

All claims and sites. You must describe the land by state, meridian, township, range, section and by aliquot part to the quarter section. To obtain the land description, you must use an official survey plat or other U.S. Government map that is based on the surveyed or protracted U.S. Public Land Survey System. If you cannot describe the land by aliquot part (e.g., the land is unsurveyed), you must provide a metes and bounds description that fixes the position of the claim corners with respect to a specified claim corner, discovery monument, or official survey monument. In all cases, your description of the land must be as compact and regular in form as reasonably possible and should conform to the U.S. Public Land Survey System and its rectangular subdivisions as much as possible . . . .

*Id.*

9. This position is further reinforced by the 2003 amendment to 43 C.F.R. § 3831.1 (1973) that removed the option of the states to eliminate the requirement of marking the surface boundaries if a claim conformed to legal subdivisions. *See infra* ¶ 20 n.11.

and recording them subject to the laws of the state or territory, and the regulations of each mining district, when they are not in conflict with the laws of the United States." *Kendall v. San Juan Silver Mining Co.*, 144 U.S. 658, 664, 12 S. Ct. 779, 781, 36 L. Ed. 583 (1892). Although this provision gives states broad authority to enact laws regarding mining, that power is conditioned on the requirement that the location be marked on the ground.[10] The inclusion of this requirement indicates the importance of marking a claim in some manner on the ground and that physical marking cannot be made optional by the states. The federal regulations go on to specifically state that corners are to be marked in accordance with state law. 43 C.F.R. § 3832.11. No persuasive argument has been presented for holding that states cannot set standards on posts and monuments. Reading the statute as disallowing requirements for posting would be contrary to the plain language of the federal statute requiring the ground to be distinctly marked.

[¶20.]     GCC cites case law from other states that have decided that physical boundary marking of placer claims is unnecessary because those claims are already adequately described by legal subdivisions that will not change. However, those

10.     30 U.S.C § 28 provides in relevant part:

> The miners of each mining district may make regulations not in conflict with the laws of the United States, or with the laws of the State or Territory in which the district is situated, governing the location, manner of recording, amount of work necessary to hold possession of a mining claim, *subject to the following requirements*: *The location must be distinctly marked on the ground so that its boundaries can be readily traced.*

(Emphasis added.)

cases were not decided under the current regulation, enacted in 2003. Previously, federal regulations allowed states to exempt placer claims from the normal requirements.[11] No such regulation or statute exists today. Further, even under the old regulations, South Dakota never had a statute allowing placer claims to be left unmarked, nor has any case law so held.

[¶21.] Current law still reflects the historical approach to mining, which required physically staking your claim on land so that all those exploring would know someone had claimed an interest in that area. The law requires that a location "be distinctly marked on the ground so that its boundaries can be readily traced." 30 U.S.C. § 28. Furthermore, SDCL 45-4-3 requires that this be done with eight posts.

[¶22.] Even without application of state law, under 43 C.F.R. § 3832.11, applying federal requirements alone, I would reach the same result. 43 C.F.R. § 3832.11(c)(2) requires that "[t]o locate a claim or site, [the locator] must . . . [s]take and monument the corners of a mining claim or site[.]" The remaining language, "which meets applicable state monumenting requirements[,]" further describes the requirements the claim or site must meet, but the absence of state law does not

---

11. 43 C.F.R. § 3831.1 (1973) read in relevant part: "A location is made by . . . staking the corner of the claim, except placer claims described by legal subdivision where State law permits locations without marking the boundaries of the claims on the ground . . . ." The regulation changed in 2003, and its current version does not have a similar provision.

obviate the requirement under federal law to stake and monument the corners of the site or claim.[12] *Id.*

*Additional Federal Mining Claims Requirements*

[¶23.]    To properly locate a placer claim, 43 C.F.R. § 3832.11(c)(3) provides that one must "[p]ost *the* notice of *location* in a conspicuous place on *the* claim or site." (Emphasis added.)  30 U.S.C. § 35 states that "no such location shall include more than twenty acres for each individual claimant[.]"  Similarly, SDCL 45-4-5 states that "[n]o location certificate may claim more than one location whether the location is made by one or several locators."  No one disputes that the location certificates are valid in this case as there are fourteen separate certificates, each covering one, twenty-acre claim.  However, Zellmer attempted to comply with 43 C.F.R. § 3832.11(c)(3) by posting all fourteen notices in one place on just one of the locations.  GCC asserts that this is sufficient to comply with the regulations.  We disagree.  A location and location certificate cover only one claim of twenty acres, and each notice of location must be posted on the single twenty-acre claim it covers. 43 C.F.R. § 3832.11(c)(3).  Therefore, unless all 280 acres are collectively considered to be one claim and one location—contrary to the plain language of the

---

12.    The use of "which" rather than "that" indicates that the clause "meets applicable state requirements" is a nonrestrictive clause, also known as a nondefining clause.  Bryan A. Garner, *The Redbook: A Manual on Legal Style* 188-89, 312-13 (3d ed. 2013).  The majority's opinion on this issue, which is written by Justice Zinter, reads "that" where a "which" has been used.  "That" is used to introduce a restrictive (or defining) clause, a clause essential to the meaning of the sentence.

statutes—Zellmer and GCC did not comply with the requirement that each notice be conspicuously placed on the claim that it covers.

[¶24.]    GCC is correct to assert that defects in regulatory compliance are curable.[13]  However, even if GCC were to receive notice from the Bureau of Land Management (BLM) and correct its failure to place a notice of location on each claim, those placer claims would still not be valid claims.  The requirement that "the location must be distinctly marked on the ground so that its boundaries can be readily traced" is a statutory requirement.  30 U.S.C. § 28.  Such defects are incurable.  43 C.F.R. § 3830.93(a) (2014).

[¶25.]    *II.    Whether GCC's placer mineral claims precluded PLS's subsequent claims.*

[¶26.]    GCC asserts that PLS was on notice of its claims and cannot now attack defects in GCC's claims.  GCC further asserts that PLS could no longer discover the same minerals once GCC's claims had been recorded and fees paid to BLM.

---

13.    43 C.F.R. § 3830.93 (2014):

When are defects curable?

(a) If there is a defect in your compliance with a statutory requirement, the defect is incurable if the statute does not give the Secretary authority to permit exceptions (*see* §§ 3830.91 and 3833.91 of this chapter).  If your payment, recording, or filing has incurable defects, the affected mining claims or sites are statutorily forfeited.

(b) If there is a defect in your compliance with a regulatory, but not statutory, requirement, the defect is curable.  You may correct curable defects when BLM gives you notice.  If you fail to cure the defect within the time BLM allows, you will forfeit your mining claims or sites.

[¶27.] The federal regulation on the effect of paying fees and recording a claim is clear. 43 C.F.R. § 3833.1(b) states that "[r]ecording a mining claim or site, filing any other documents with BLM, or paying fees or service charges, as this part requires, does not make a claim or site valid if it not otherwise valid under applicable law." Failure to properly locate a placer claim under state and federal law is not saved by paying fees or recording the site.

[¶28.] Zellmer cites case law from other states to assert that because PLS was on notice of existing claims, it could neither complain of nor take advantage of any defects. However, the cases GCC refers us to are ones in which a valid claim was first properly located, but suffered minor compliance defects or evidence of the location disappeared over time.[14] Zellmer and GCC did not properly locate the claims in this case, and to hold that PLS cannot bring an action now would preclude

---

14. *Pease v. Johnson*, 235 P.2d 229, 452 (Cal. Ct. App. 1951); *Independence Placer Mining Co. v. Hellman*, 109 P.2d 1038, 1042 (Idaho 1941) ("One who has actual notice, that a prior locator is claiming a tract of mining ground *and has done location work thereon* and continued to do prospecting and assessment work on the property, is not in a position to make a valid location on such property . . . and he may not question the sufficiency of the original location or the character of the original occupant's title."); *Fuller v. Mountain Sculpture, Inc.*, 314 P.2d 842, 846 (Utah 1957); *Scoggin v. Miller*, 189 P.2d 677, 685 (Wyo. 1948) ("It is a well known fact that the boundaries as marked upon the ground, and the notices thereon posted, often disappear within a very short time, but there is no requirement in the law that they shall be maintained . . . . When the location of the mining claim is once sufficiently marked upon the surface so that its boundaries can be readily traced, and all the other acts of location are performed as required by law, the right of possession becomes fully vested in the locator, and cannot be divested . . . without the act or fault of the locator, during the time he continues to perform the necessary work upon the claim, and comply with the law in all other essential respects.") (citation omitted) (internal quotation marks omitted).

an adverse party from asserting challenges against those claiming interests that do not exist, effectively protecting a property interest where there is none.

## Conclusion

[¶29.] SDCL chapter 45-4 applies to placer claims, and SDCL 45-4-3 is consistent with federal law. Zellmer failed to follow state and federal law requiring a claim to be physically marked on the ground. This left the minerals open for subsequent discovery and location. The circuit court correctly held that PLS properly located its claims in the same area and therefore has title subject to the paramount title of the United States.

[¶30.] GILBERTSON, Chief Justice, concurs.

[¶31.] ZINTER and WILBUR, Justices, and KONENKAMP, Retired Justice, concur in result on all claims except CHUCK NO. 2012-01, a.k.a. CM-5.

[¶32.] KERN, Justice, not having been a member of the Court at the time this action was assigned to the Court, did not participate.

[¶33.] **ZINTER, Justice, writing the majority opinion regarding mining claim CHUCK NO. 2012-01, a.k.a. CM-5.**

[¶34.] This case involves the state and federal requirements for "placer" mining claims. Nevertheless, Justice Severson concludes that GCC's predecessor in interest failed to comply with a federal regulation (43 C.F.R. § 3832.11(c)(2)) incorporating a state law (SDCL 45-4-3) that governs "lode or vein" claims. We disagree with Justice Severson's conclusion that SDCL 45-4-3 applies to placer claims. Therefore, GCC's predecessor did not violate 43 C.F.R. § 3832.11(c)(2) by failing to comply with SDCL 45-4-3. However, GCC's predecessor failed to follow a

second federal requirement (43 C.F.R. § 3832.11(c)(3)) and a federal statute (30

U.S.C. § 28) regarding posting on thirteen of the fourteen claims. Therefore, PLS is

entitled to title on those thirteen claims. GCC is only entitled to title on the one,

twenty-acre claim where it followed 43 C.F.R. § 3832.11(c)(3) and 30 U.S.C. § 28 by

marking its claim on the ground with a post that gave notice of the boundaries of

that claim.

[¶35.]     43 C.F.R. § 3832.11(c)(2) required GCC to "[s]take and monument the

corners of a mining claim or site *which meets applicable state monumenting*

*requirements*[.]" (Emphasis added.) Justice Severson concludes that the "applicable

state monumenting requirements" are in SDCL 45-4-3, which requires eight posts

marking the corners and sides of each twenty-acre claim. We disagree because that

statute governs lode claims, not placer claims.[15] SDCL 45-4-3 provides:

---

15.     Justice Severson's reliance on *Suessenbach v. First Nat'l Bank of Deadwood*,
        41 N.W. 662 (Dakota 1889), is misplaced. *Suessenbach* did not involve the
        question whether the requirements in SDCL 45-4-3's predecessor (1875
        Dakota Sess. Laws ch. LXVII, § 6) applied to placer claims. Therefore,
        Justice Severson's cited language, *supra* ¶ 17, is dicta. Justice Severson,
        however, argues that *Suessenbach* is not distinguishable because "[t]he
        parties and court recognized that a placer claim was located by the procedure
        as outlined in the opinion, which includes staking the corners and sides of the
        claim." *See supra* ¶ 17 n.5.

        However, the language of *Suessenbach* indicates that the case involved local
        mining district rules rather than the state/territorial statutes now found in
        SDCL 45-4-3. It is significant that both then and now, 30 U.S.C. § 28
        provided: "The miners of each mining district may make regulations not in
        conflict with the laws of the United States, or with the laws of the State or
        Territory in which the district is situated, governing the location, manner of
        recording, amount of work necessary to hold possession of a mining
        claim . . . ." *Suessenbach's* reference to staking and monumenting the corners
        and sides of the claim appears to have been a reference to such procedural
        laws of the local Whitewood mining district. This fact is apparent upon

                                                        (continued . . .)

_____

(. . . continued)

review of the complete quotation of the Territorial Court. The Court noted that the claimants in that case had complied with the local rules of the local Whitewood mining district. They

> duly located, claimed, and appropriated the same as placer mining ground, the same being known and called "Placer Claim No. 15," above discovery, on Whitewood Gulch, *in Whitewood mining district*, Lawrence County, Dak., *in accordance with the laws of the United States, the local laws, and the customs, rules, and regulations of miners in said mining district*, by distinctly marking the surface boundaries of said claim so that they could be readily traced on the ground; by setting substantial stakes at each corner of said claim, and on the sides thereof, with the name of the claim marked thereon and the name of the locators; and by putting a plain sign or notice at the points of discovery thereon, containing the name of the claim as "Placer Claim No. 15," above discovery, and the names of the locators, to-wit, Noah Siever, Edward Durham, William Moore, and Thomas Clifton, and the date of location, to-wit, March 16, 1877; and by filing and recording a certificate of location in the records *of the recorder of said Whitewood mining district . . .* [and by] *working and developing* said placer claim No. 15, said placer claim No. 15 *containing not to exceed four acres, and no more than was allowed by the local laws, rules, and regulations in force in said mining district.*

*Suessenbach*, 41 N.W. at 662-63 (emphasis added). It also appears that the local Whitewood mining district rules were at issue because the third issue in that appeal involved the contention that the trial court erred "in admitting in evidence [of] the mining rules and regulations of Whitewood mining district[.]" *See id.* at 666. It further appears that the rules at issue involved local Whitewood district rules because the court noted the rules at issue limited the placer claim to four acres, a provision not found in the territorial statutes. Therefore, the precedential value of *Suessenbach* appears to be limited by the local laws, rules, and regulations of the Whitewood mining district. *Suessenbach* is no authority for the additional proposition that placer claims are governed by the lode-claim-posting requirements set forth in the session law of Dakota Territory that was carried forward into SDCL 45-4-3. The territorial law was never mentioned in the opinion.

PLS's reliance on *Hawke v. Deffenbach*, 22 N.W. 480 (Dakota 1885), and *City of Deadwood v. Whittaker*, 12 S.D. 515, 81 N.W. 908 (1900), is subject to the same infirmity. Because the statutory requirements for locating placer claims were not at issue in those cases, the references to staking and monumenting are dicta.

> Surface boundaries shall be marked by eight substantial posts, hewed or blazed on the side or sides facing the claim and plainly *marked with the name of the lode* and the corner, end, or side of the claim that they respectively represent and sunk in the ground; one at each corner and one at the center of each side line and one at each end *of the lode.* If it is impracticable because of rock or precipitous ground to sink such posts, they may be placed in a monument of stone.

(Emphasis added.) "Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, . . . the Court's only function is to declare the meaning of the statute as clearly expressed." *Martinmaas v. Engelmann*, 2000 S.D. 85, ¶ 49, 612 N.W.2d 600, 611 (quoting *Moss v. Guttormson*, 1996 S.D. 76, ¶ 10, 551 N.W.2d 14, 17). Here, there is nothing ambiguous about SDCL 45-4-3. The language plainly prescribes the method for marking "lode" claims and no others.

[¶36.] Statutory intent is also determined from "enactments relating to the same subject." *US W. Commc'ns, Inc. v. Pub. Utils. Comm'n of S.D.*, 505 N.W.2d 115, 123 (S.D. 1993). Most of the statutes in SDCL chapter 45-4 refer only to lode and vein claims. *See* SDCL 45-4-1 (discovery of the vein or lode); SDCL 45-4-2 (conditions precedent to location certificate for lode claim pursuant to SDCL 45-4-4); SDCL 45-4-3 (marking surface boundaries regarding lode claim); SDCL 45-4-4 (location certificate requirements for lode claim); SDCL 45-4-6 (dimensions of lode claim); SDCL 45-4-10 (surface ground included in location or location certificate for lode claim). And the few statutes that do not reference any type of claim are not material to the issues in this case. The only reference to placer claims is in SDCL 45-4-20. That statute makes it a misdemeanor to obtain possession of "lode, gulch, or placer" claims by force, violence, or threats. *Id.* By referring to both lode and

placer claims in SDCL 45-4-20, the Legislature clearly demonstrated its knowledge of the distinction between these types of claims. And, because the Legislature only referred to lode claims in SDCL 45-4-3, the Legislature demonstrated its intent that the requirements of SDCL 45-4-3 only apply to lode claims.

[¶37.] The legislative history of the statute confirms this conclusion. Since its enactment by the Territorial Legislature in 1875, the language in SDCL 45-4-2 and SDCL 45-4-3 has only referred to lode claims. *See* 1877 Revised Codes of the Territory of Dakota, Political Code, ch. 31, §§ 5-6. Indeed, the first ten sections of chapter 31, of which §§ 5-6 are a part, refer exclusively to lode or vein claims. Moreover, the material parts of chapter 31 dealing with lode claims are generally identical to the corresponding parts of SDCL chapter 45-4. *Compare* SDCL 45-4-2 to -11, -13 to -19, -22, *with* 1877 Revised Codes of the Territory of Dakota, Political Code, ch. 31, §§ 1-6, 9-10, 12-13, 16-20. These are all lode or vein mining regulations. Indeed, even PLS agrees that "South Dakota has no statutes with specific requirements for placer mining claims. Rather, its statutes cover the requirements for lode claims." Brief for Appellee at 21 (citing SDCL chapter 45-4). Because SDCL 45-4-3 has never applied to placer claims, GCC's monumenting and staking did not fail to meet the requirements of 43 C.F.R. § 3832.11(c)(2) by failing to meet the requirements of SDCL 45-4-3.[16]

---

16. Justice Severson would hold that GCC failed to meet the federal requirements of 43 C.F.R. § 3832.11(c)(2) even without considering the requirements of SDCL 45-4-3. *See supra* ¶ 22. Under Justice Severson's interpretation, the federal regulation requires that the corners of the mining claim must be staked and monumented without regard to state law. *See id.* The plain language of 43 C.F.R. § 3832.11(c)(2) does not support that

(continued . . .)

_____

(. . . continued)

interpretation. The regulation provides that claimants must "[s]take and monument the corners of a mining claim or site *which meets applicable state monumenting requirements*[.]" *Id.* (emphasis added). Here, there are no applicable state monumenting requirements for placer claims. Justice Severson's interpretation reads the limiting language "which meets applicable state monumenting requirements" out of the federal regulation. We do not interpret laws to nullify or make meaningless any of the words actually used. *State v. Miranda*, 2009 S.D. 105, ¶ 23, 776 N.W.2d 77, 83.

Justice Severson argues that our interpretation of 43 C.F.R. § 3832.11(c)(2) incorrectly reads the phrase "which meets applicable state momumenting requirements" as a restrictive clause. *See supra* ¶ 22 n.12. Justice Severson contends that the phrase is a nonrestrictive clause. *See id.* However, there is no comma preceding the "applicable State requirements" clause in 43 C.F.R. § 3832.11(c)(2). Therefore, notwithstanding the use of the word "which," the absence of a comma makes the phrase a restrictive clause. "It's not an outright blunder to use *which* to introduce a restrictive clause." Bryan A. Garner, *The Redbook: A Manual on Legal Style* 189 (3d ed. 2013). While "that" may be preferred to "which" when introducing a restrictive clause, a comma-less "which" is to be read as a restrictive clause. *See id.* Commas are to be used to introduce nonrestrictive clauses. *See id.* ("Never use commas . . . to set off a restrictive clause."); William Strunk Jr. & E.B. White, *The Elements of Style* 3-4 (3d ed. 1979) ("Nonrestrictive relative clauses are parenthetic . . . . Commas are therefore needed. . . . Restrictive clauses, by contrast, are not parenthetic and are not set off by commas."); Andrea Lunsford & Robert Connors, *The New St. Martin's Handbook* 354 (5th ed. 2001) ("Nonrestrictive elements—clauses, phrases, and words that do *not* limit, or 'restrict,' the meaning of the words they modify—are set off from the rest of the sentence with commas. Restrictive elements *do* limit meaning and are *not* set off with commas."). Thus, the comma-less "which" in 43 C.F.R. § 3832.11(c)(2) introduces a restrictive clause "that is essential to the meaning of the sentence." *See* Garner, *supra*, at 188.

Indeed, Justice Severson adopts the restrictive clause interpretation of the same phrase in other parts of his writing. *See supra* ¶ 19 (citing 43 C.F.R. § 3832.11) ("The federal regulations go on to specifically state *that corners are to be marked in accordance with state law*." (emphasis added)); ¶ 17 ("SDCL 45-4-3 sets forth the procedure claimants *must follow* when marking the surface boundaries of placer claims." (emphasis added)). It must finally be noted that if Justice Severson were correct that the word "which" was not introducing a restrictive clause, then the balance of that same clause further requiring claims to meet "the size limitations described in § 3832.22 for lode and placer claims" would also be not essential to the meaning of the sentence. This view is obviously incorrect because there is no dispute that the size of

(continued . . .)

[¶38.]    GCC was, however, also required to follow 43 C.F.R. § 3832.11(c)(3), which required claimants to "[p]*ost the notice of location* in a conspicuous place *on the claim or site.*" (Emphasis added.)  And, "[a]n individual placer claim may not exceed 20 acres in size." *Id.* § 3832.22.  Further, "[t]he location must be distinctly marked on the ground so that its boundaries can be readily traced." 30 U.S.C.A. § 28.[17] GCC failed to follow these requirements because it did not post a location notice on each of the fourteen, twenty-acre-claim sites. GCC posted all fourteen notices on the corner of one site (CM-5).  Because GCC only complied with 43 C.F.R. § 3832.11(c)(3) and 30 U.S.C.A. § 28 on CM-5, GCC is only entitled to priority on CM-5.

[¶39.]    GCC, however, contends that its failure to follow the federal requirements for posting on each claim is immaterial because PLS had actual notice of all fourteen claims.  GCC points out that PLS observed GCC's discovery marker on CM-5, and that marker contained GCC's fourteen notices of location.  With respect to its failure to post notice on the other thirteen claims, GCC argues: "It is

_____

(. . . continued)

    placer and other claims are restricted by other federal regulations.  *See* 43 C.F.R. § 3832.11(c)(2) ("To locate a claim or site, you must— (2) Stake and Monument the corners of a mining claim or site *which* meets applicable state monumenting requirements *and* the size limitations *described in* § 3832.22 for lode and placer claims, § 3832.32 for mill sites, and § 3832.42 for tunnel sites[.]" (emphasis added)); 43 C.F.R. § 3832.22(b)(1) ("An individual placer claim may not exceed 20 acres in size.").

17.    Contrary to GCC's argument, 30 U.S.C. § 35's provision (placer claims located on surveyed lands must conform to legal subdivision descriptions) does not dispense with the requirement of 30 U.S.C. § 28 that the location of mining claims must still be distinctly marked on the ground. *See Worthen v. Sidway*, 79 S.W. 777, 779 (Ark. 1904).

well settled that minor defects in the notices, descriptions, or procedure will not defeat the location of a prior claimant at the instance of one having actual notice." Brief of Appellant at 18 (citing *Fuller v. Mountain Sculpture, Inc.*, 314 P.2d 842, 846) (Utah 1957)). However, as Justice Severson correctly notes, in *Fuller* and GCC's other cited cases, there were valid claims that were first properly located, and there were only minor compliance defects or evidence of location disappearance over time. *Supra* ¶ 28. Moreover, physical notice was marked on the ground in those cases.[18] In this case, GCC did not validly locate by physically posting on

---

18. *See Fuller*, 314 P.2d at 846 (involving properly marked monuments and a posted notice of location, but mistakenly listing the axis of the claim); *Yosemite Gold Mining & Milling Co. v. Emerson*, 208 U.S. 25, 30, 28 S. Ct. 196, 198, 52 L. Ed. 374 (1908) (involving a claim in which there was marking on the ground); *Haws v. Victoria Copper Mining Co.*, 160 U.S. 303, 318, 16 S. Ct. 282, 288, 40 L. Ed. 436 (1895) (involving a marking on the ground by writing notices on a tree that described the boundaries); *Pease v. Johnson*, 235 P.2d 229, 231 (Cal. Ct. App. 1951) (involving a claim where old monuments were rebuilt and notices were placed); *Kramer v. Sanguinetti*, 91 P.2d 604, 607 (Cal. Ct. App. 1939) (involving a notice in a tin can deposited on a pyramid of rocks); *Independence Placer Mineral Co. v. Hellman*, 109 P.2d 1038, 1042 (Idaho 1941) (involving a case where stakes were set to mark the location for all claims); *Steele v. Preble*, 77 P.2d 418, 428-29 (Or. 1938) (involving actual marks and stakes on the ground with proper notices, but stakes were no longer present); *Powell v. Atlas Corp.*, 615 P.2d 1225, 1227 (Utah 1980) (involving only "minor differences in the description of a claim as recorded from the actual location"); *Springer v. S. Pac. Co.*, 248 P. 819, 825 (Utah 1926) (involving a claim where the boundaries were marked by posts and rock mounds); *Hagerman v. Thompson*, 235 P.2d 750, 755 (Wyo. 1951) (involving a posted discovery notice and posts at six different corners, and further noting that "[t]here must doubtless be a reasonable physical substratum which marks the claim and a reasonable attempt to comply with the statutory requirements"); *Scoggin v. Miller*, 189 P.2d 677, 688 (Wyo. 1948) (involving location by statutory compliance including posting and marking on the ground, but a typographical error on the notice).

thirteen of the fourteen claims.  Because GCC's claims were never properly located on thirteen of its fourteen sites, GCC's cases are inapposite.

[¶40.]　　　GCC claims fourteen sites.  But it failed to comply with 43 C.F.R. § 3832.11(c)(3) and 30 U.S.C.A. § 28 on thirteen of those sites.  Those failures are more than minor defects.  Therefore, we agree with Justice Severson that PLS's notice of GCC's claims was immaterial.  Because GCC did not validly locate thirteen claims, the circuit court correctly entered judgment quieting title in PLS on those claims.  But because GCC was the first to comply with the federal requirements on CM-5, we reverse and remand for the circuit court to enter judgment quieting title to CHUCK NO. 2012-01, a.k.a. CM-5, in GCC.

[¶41.]　　　WILBUR, Justice, and KONENKAMP, Retired Justice, concur.

[¶42.]　　　GILBERTSON, Chief Justice, and SEVERSON, Justice, dissent.